# THE PEOPLE OF THE STATE OF ILLINOIS EX REL.
## v.
## BOARD OF EDUCATION.

*Schools—Division of District—Apportionment of Pupils—Powers of
Board—Mandamus—Evidence—Instructions—Bill of Exceptions—Jury.*

1. It is within the power of a Board of Education to lay off and divide
the district into sub-districts, establish therein schools of different grades
and apportion pupils to the several schools.

2. If, in the exercise of these powers, the rules and orders made are
reasonable, necessary and such as will best afford all children of school age
within the district the benefits of proper instruction, they will be sustained
by the courts.

3. Upon a petition for *mandamus* to compel a Board of Education to
enroll as pupils in a certain school within the district, the children of the
relator, who resided in a sub-district of the same district, it is *held:* That
there was no substantial error in admitting the evidence of a certain wit-
ness and refusing to admit a letter of the State Superintendent, nor in giv-
ing certain instructions; that objections to remarks of counsel not contained
in the bill of exceptions can not be considered; that the children of relator
were properly required to attend the school in the sub-district in which he
resided; and that he acquired no right to send them to the other school by
placing them to board near it and sending them for a few days without the
knowledge or consent of the Board.

Opinion filed January 4, 1888.]

APPEAL from the Circuit Court of Madison County; the Hon. AMOS WATTS, Judge, presiding.

Messrs. DALE & BRADSHAW and METCALFE & METCALFE, for appellant.

Messrs. BURROUGHS & WARNOCK, for appellees.

GREEN, P. J. This was a proceeding by *mandamus*, to compel said Board of Education to enroll as pupils in the Webster School two children of Frank B. Lemen, the relator, and to admit said children to all the privileges of said school. Issues were made up and submitted for trial to a jury, who found a verdict for defendant, whereupon relator moved to set aside the verdict and for a new trial, which motion the court overruled, and rendered judgment against relator for costs. To reverse this judgment the relator appealed. It appears from the record the said Board of Education set apart certain sections of said district 3 as a sub-district, in March, 1885; that relator, with his family, then resided and continued to reside within the bounds of said sub-district up to and at the time of filing the petition; that a comfortable and suitable school house was provided by said Board, ready for occupation, in the early part of October, 1885, sufficient to accommodate all the children residing in said sub-district entitled to school privileges, including said children of relator, from that time up to and when said petition was filed; that relator sent his said children to said school in October, 1885, and they continued to attend there as pupils (with the exception of four or five weeks' absence), during the whole of that school year. The distance from the residence of relator to the Webster School, in Collinsville, is four and three-fifths miles; to the Clay school house in the sub-district, by the public road, three and four-fifths miles, and by the route across the fields used by said children one and four-fifths miles.

On Saturday, September 4, 1886, relator took his children

to Collinsville to stay with an aunt there and attend the Webster School, which was in School District 3, but not in said sub-district. On September 6th, the first day of the school term, Ralph, the elder of the two children, was placed in room five, and Ames, the other child, was placed in room four by the principal of the Webster School, who did not then know the parents of said children were residents of said sub-district. On September 6th, two members of said Board of Education, visiting the Clay School in said sub-district, learned the children of relator were not in attendance there, and returning to Collinsville, found one of them in room four and the other in room five of the Webster School, and directed the principal to take them out and send them to the school where they belonged. This action was communicated to the relator by said principal on September 7th, and on that day, after receiving such notice, the relator interviewed the principal, inquired about the notice, and expressed his wish to send his children to the Webster School, because it was nearer and more convenient. The principal and relator then visited the president of the Board to ascertain if some arrangement could be made to permit said children to attend the Webster School instead of the Clay School, and the president said he would call a meeting of the Board to take action in the matter. On September 8th, such meeting was held, and the record of its proceedings shows the Board met to consider the application of relator to permit his two children to attend in rooms four and five of the Webster School, and it was ordered "said application be denied, because said children reside in the sub-district of this school district where is situated the Clay School and because of the crowded condition of said rooms of said Webster School," and it was ordered that said children be assigned for the present term to the Clay School in said sub-district. This action of the Board was communicated to relator within a day or two after the meeting, and on September 15th relator was again notified by said principal that the Board had ordered his children be not assigned to the Webster School, and if he persisted in sending them there they would be treated as visitors. The chil-

The People v. Board of Education.

dren continued to attend said school for the first five weeks of the term, but received tuition during the first week only, and not after the teachers had notice of the action of the Board. The relator took his children home, and on October 18, 1886, filed his petition. The errors assigned are: First, the refusal of the court to admit a letter from Raab, State Superintendent, to be read on behalf of relator. Second, admitting improper testimony given by Lehr, the principal of the Webster School, on behalf of defendants. Third, giving improper instructions for defendants. Fourth, denying relator's motion to set aside verdict and for a new trial. Fifth, not awarding the writ of *mandamus*, and rendering judgment for respondents.

We find, after careful examination of the record, no substantial objection to the ruling of the Circuit Court, either in admitting the testimony of Lehr and refusing to admit the letter offered on behalf of the relator or in giving the instructions complained of. Under the fourth assignment of error counsel suggest improper remarks were made by defendants' attorney in his argument to the jury, and that four of the jurors who tried the case were School Directors, hence the verdict should have been set aside. The bill of exceptions does not disclose what remarks were so made, or that any member of the jury was a School Director, and unless such objections (if material) are made a part of the record by being preserved in the bill of exceptions, they can not be noticed by this court.

The merits of the case, and the law applicable to the facts proven, will now be considered. It is not objected that defendants acted improvidently or unreasonably in setting apart the territory embraced in said sub-district, as a sub-district, nor is it proved, or insisted upon, that the children of relator would not have received sufficient and proper instruction, suited to their capacity, if they had attended the school in said sub-district; but relator claims that in going to and from that school his children were obliged to go through fields in which grass, clover, etc., was growing, and they would get wet with the dew, and there was a branch or stream they had to cross which

became swollen after a rain, and they were in danger of falling in, and in winter, when the snow was deep, were obliged to break a path; in short, that the road was bad and the children's health liable to be impaired by exposure to said dangers, and hence it was impossible for them to attend. If the testimony in chief, given by the parents, the grandfather and aunt of these children, and the testimony in chief of the two other witnesses for relator who testified touching said matters, is taken by itself, it would support the relator's objections to sending his children to the sub-district school, and for the reasons so urged by him; but the facts elicited upon the cross-examination of these witnesses, and the testimony of witnesses given on behalf of defendants, justified the jury in finding said route to be neither very bad nor dangerous, and that the children of relator in using it were not exposed to greater jeopardy in respect to health or liability to accident than children attending country schools usually are subjected to, who live a like distance from the school they attend. It also appeared, at the time relator sent his children to the Webster School, room four had a seating capacity for fifty-four pupils, and that fifty-seven, including one child of relator, were then in attendance, and room five had a seating capacity for fifty-two, and there were fifty-five in attendance, including the other child of relator. These children, aged respectively ten and nine years, were present and testified at the trial, thus giving the jury an opportunity to see them and judge as to their physical ability.

But relator further insists that, because he sent these children away from their home and made arrangements to board them with an aunt in Collinsville during the school term, and sent them to the Webster School and received tuition as pupils for a few days, said children acquired a right to attend said school, which defendants could not take away, and could not assign them to the school in the sub-district where their parents resided, and this, notwithstanding defendants neither knew of, nor consented to the removal of the children, and at the earliest opportunity after learning the fact of their attending the Webster School, made an order refusing relator's

application to permit them to attend that school, and assigning them to the school in said sub-district, which action of the Board was communicated to the relator immediately.   Such contention receives no support in Rulison v. Post, 79 Ill. 567, cited on behalf of appellant, and we can not hold it to be the law.   The powers given the Board of Education are conferred by the statute, and the following among others :

" To establish schools of different grades and make regulations for the admission of pupils into the same."

" To lay off and divide the district into sub-districts."

" They shall have power to apportion scholars to the several schools."   Starr & C. Ill. Stat. 2250.   In the exercise of these powers, the rules and orders made by the defendants must not be unreasonable or such as to defeat the wise and beneficent purposes of the school law, and if reasonable, necessary and such as will best afford to all the children in their district entitled to attend public schools an opportunity to receive the benefits of proper instruction, such reasonable and necessary rules and orders should be sustained by the courts. Tested by this rule under the facts proven, the order of defendants refusing permission to relator to send his children to the Webster School, and assigning them to the school in said sub-district, was reasonable and necessary, and a proper exercise of the express power conferred by the statute.   The crowded condition of the rooms in the Webster School, and the fact that said children belonged in said sub-district where a good school and competent teacher were furnished, and which they could attend without any considerable inconvenience (as we think the proof shows), justified said order; these defendants could not adapt their action merely to suit the wishes of relator in respect to his children, but their duty required that the rights and interests of the scholars in the Webster School also should be protected, and they be furnished with proper accommodations and seats in their respective rooms.   We are satisfied the verdict of the jury was supported by the evidence, and that the court properly refused to award the writ prayed for.   The judgment is affirmed.                              *Judgment affirmed.*