BERNSTEIN, ET AL. *v.* BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY

[No. 508, September Term, 1966.]

466

*Decided, per curiam January 5, 1967.*

*Opinion filed February 13, 1967.*

468

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Karl G. Feissner,* with whom were *Alpern & Feissner* on the brief, for appellants.

*Paul M. Nussbaum* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

Parents of children living in the Hy-View Terrace Apartments in Prince George's County, on behalf of themselves and other Maryland citizens similarly situated, sought an injunction against the Board of Education of Prince George's County to restrain the transfer of their children from the Forestville Elementary School, which they formerly attended, to the Arrowhead Elementary School.[1] After a full hearing in the Circuit Court for Prince George's County, Judge Powers, in a well-reasoned and lucid oral opinion, dismissed the bill. We advanced the hearing of the appeal because of the importance of the case to the children involved. After the oral argument, by per curiam order on January 5, 1967, we affirmed Judge Powers' decree. The reasons for our decision follow.

The order of the Board of October 7, 1966 attacked by the appellants, reads in part as follows:

---

1. The owners of the Hy-View Apartments, through their representative, the appellant Bernstein, were also party plaintiffs below, claiming that they were payers of real estate taxes in the county, and were adversely affected by the Board's action through loss of tenants. The standing of these persons to bring a suit of this nature is, at the least, highly questionable but their right to sue is not pressed. The standing of the other appellants is not questioned by the Board in this appeal. See McCollum v. Board of Education, 333 U. S. 203 (1948). The references to the appellants in this opinion are only to the parent-appellants.

"whereas, the school population in the present Forestville, North Forestville, and Arrowhead Elementary Schools are greatly out of proportion to their respective capacities, and whereas, a fourth elementary school is being planned, east of Donnell Drive, and whereas immediate relief for the Forestville Elementary School is necessary, and whereas, it is impractical at this point to establish new bus routes for children presently walking to their respective schools, now, therefore, be it resolved that the following immediate steps be taken to relieve the overcrowding:

1. that effective Friday, October 7, 1966, the attendance area of the Arrowhead Elementary School is to include the Phelps subdivision,
2. that effective Friday, October 7, 1966, the Hy-View Terrace Apartments shall be included in the Arrowhead Elementary School attendance area until the new building proposed in the Donnell Drive area is available * * *"

Approximately 175 children were affected by the action. Of these, about 75 lived in the Hy-View Apartments; the other 100, whose parents have not joined in the appellants' suit, lived in individual homes in the Phelps Subdivision.

The appellants contend: that the Board is an agency subject to the provisions of the Maryland Administrative Procedure Act; that the Board failed to give proper notice of its proposed hearing regarding the transfer of students in mid-term from one elementary school to another, much farther away; that the law requires the Board to hold a hearing, and that it consult and advise with interested citizens prior to changing the mid-term attendance of school children; that the purported hearing given by the Board was contrary to the principles of due process of law; that the bias and prejudice of one of the Board members rendered the entire proceedings a nullity; that the Board's actions, inasmuch as they were a usurpation of the powers and duties of the County Superintendent of Schools, were illegal; that the Board's refusal to provide appellants with any record of the purported hearing denied them an oppor-

tunity to prepare for the trial below, and denied the court sufficient background material from which properly to consider the merits of the cause; and that the Board's actions, being motivated by racial considerations, were illegal.

These contentions can best be discussed after a determination of the legal status of the Board and of the scope of judicial review of the action of which the appellants complain.

I

The statutory provisions in respect of county boards of education are contained in Chapter 5 of Code (1957), Article 77. Section 50 states that the boards are bodies "politic and corporate." Section 55 reads as follows:

> "Control and supervision of system.
>
> "The county board of education shall exercise, through its executive officers, the county superintendent, and his professional assistants, control and supervision over the public school system of the county. The board shall consult and advise, through its executive officer and his professional assistants, with the boards of district trustees, principals, teachers and interested citizens, and shall seek in every way to promote the interests of the schools under their jurisdiction."

Section 56 provides that the boards "shall divide the county into appropriate school districts." The county superintendent and the school principals of the schools involved are empowered, under Section 130, to determine "to which school pupils shall be admitted." The first part of Section 150 provides that:

> "The county superintendent of schools shall explain the true intent and meaning of the school laws, and of the by-laws of the State Board of Education. He shall decide, without expense to the parties concerned, all controversies and disputes involving the rules and regulations of the county board of education and the proper administration of the public school system in the county, and his decision shall be final, except that an appeal may be had to the State Board of Education if taken in writing within thirty days."

The appellants' contentions that, under the statutory provisions, it was the duty of the County Superintendent, rather than that of the Board, to decide questions as to the transfer of students from one school to another is without merit. The Superintendent, with the school principal, determines the school to which pupils shall be admitted, but all the pupils here involved had been admitted prior to the Board's order. That action was in effect a redivision of the county into school districts, and, under Section 56, that determination is to be made by the Board.[2] The redivision did not involve a controversy or dispute under Section 150 but was an exercise of the legislative discretion entrusted to the Board.

The contention of the appellants that the Board is a State agency, within the meaning of the Administrative Procedure Act, is of interest not because we find substance in the contention but because it brings into focus the legal nature of the Board's action. Under the Act, an agency is defined as "any State board * * * authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches," with certain specified exceptions. Code (1957), Article 41, Section 244.

It is the State Board of Education to which educational matters affecting the State and the general care and supervision of education are entrusted. Code (1957), Article 77, Chapter 3. It is the State Board which is to determine the educational policies of the State, and which is authorized to enact by-laws for the administration of the public school system, which have the force of law. Article 77, Section 21. A county board of education has control of educational matters affecting only the county, subject to the by-laws and policies of the State Board. Article 77, Sections 3 and 54; *Wilson v. Board of Educ. of Montgomery County,* 234 Md. 561, 200 A. 2d 67 (1964).

A county board of education such as the appellee is an administrative agency but it is not a State agency authorized by law to make rules or adjudicate cases. No decisions of this

---

2. Dr. Schmidt, the County Superintendent, testified that he was in favor of the action taken by the Board, and gave in detail the reasons for his position. He attended the first part of the Board's meeting on October 4.

Court support the appellants' contention to the contrary. Cases such as *Coddington v. Helbig*, 195 Md. 330, 73 A. 2d 454 (1950), *Hanna v. Board of Educ. of Wicomico County*, 200 Md. 49, 87 A. 2d 846 (1952), *Board of Educ. of Montgomery County v. Montgomery County*, 237 Md. 191. 205 A. 2d 202 (1964) and *Dixon v. Carroll County Bd. of Educ.*, 241 Md. 700, 217 A. 2d 364 (1966), deal with the statutory powers of county boards of education vis-a-vis the County Commissioners or the general powers of such boards as administrative agencies. A board is not a State agency under the Act merely because, under its statutory authorization, it has administrative powers in the county to which its jurisdiction is limited.

In any event, the action of the Board of which the appellants complain is not a contested case, within the meaning of the Administrative Procedure Act or an adversary proceeding at common law. Absent a claim of deprivation of equal educational opportunity or unconstitutional discrimination because of race or religion, there is no right or privilege to attend a particular school. In this case, it is admitted that the educational facilities of the school to which the children were transferred are equal in all respects to those of the school which they formerly attended. The appellants, for reasons hereinafter considered, claim deprivation of due process of law in the Board's procedure, but the only constitutional right which they invoke insofar as the Board's substantive action is concerned is under Article 6 of the Maryland Declaration of Rights. That Article states that "all persons invested with the Legislative or Executive powers of Government are the Trustees of the Public, and, as such, accountable for their conduct * * *" The exhortation of that Article is reflected in the Court's decisions that, in adversary administrative proceedings, where there is no adequate administrative remedy, or where that remedy does not provide for judicial review of the agency's action, recourse may be had to the courts. See authorities cited in *Poe v. Baltimore City*, 241 Md. 303, 308-09, 216 A. 2d 707 (1966). But the Article does not metamorphize an administrative action essentially legislative in nature into a contested case.

That the Board's proceeding of October 4, 1966 was quasi-legislative and not an adversary proceeding is clear. *Union In-*

*vestors, Inc. v. Montgomery County,* 244 Md. 585, 224 A. 2d 453 (1966); *Travelers Indemnity Co. v. Nationwide Constr. Corp.,* 244 Md. 401, 224 A. 2d 285 (1966); and cases therein cited. The division or redivision of the county into school districts affects the children and their parents as a whole, for the general benefit and the proper administration of the county school system, and is not based on individual factors. When the proceeding involves essentially legislative considerations, a hearing is not a legal requisite, unless the governing statute or an administrative rule provides for it. *Union Investors, Inc., supra.*

Under Section 55 of Article 77 the Board is required to consult and advise, through its executive officer and his professional assistants, with interested citizens. Mr. W. Carroll Beatty, president of the Board, testified that he had served in that position seven and a half years; during that time, it has been the policy of the Board to hold open meetings, at which parents of children affected by a proposed action, or their spokesmen, are given the right to be heard. The legal effect of that policy may be taken as a Board rule that, before such a matter as redivision of school districts is determined, the Board will have a public hearing open to the persons affected. Whether that rule has been adopted by the Board because of its interpretation of the statutory provisions or for reasons of wise administration is immaterial. Had the Board departed from its established policy in this case, a serious legal question would have been presented. See *Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966). When a hearing is a part of the administrative process, whether by statutory provision or rule, the hearing must be a fair one. *Travelers Indemnity Co. v. Nationwide Constr. Corp., supra,* Part I.

## II

For a hearing to be a fair one, in an administrative agency as in more formal tribunals, adequate notice and opportunity to be heard must be afforded. *Cassidy v. Baltimore County Bd. of Appeals,* 218 Md. 418, 421-22, 146 A. 2d 896 (1958); *Travelers Indemnity Co. v. Nationwide Constr. Corp., supra,* Part I, and authorities therein cited. The proposal to change the school assignments of the children involved in this case was

set for presentation to the Board on October 4, 1966. On September 27, the children were given letters to take to their parents advising them of the proposal and the date on which it was to be considered by the Board; the letter also stated that staff representatives would be present at the Forestville School, which the children were then attending, on September 29, at 3:00 P.M. to answer questions regarding the proposed change.

At the meeting of September 29, five members of the Board's Staff were present as well as a number of the parents of the children involved. The proposal was explained and debated. The parents were again advised that the proposal would be considered by the Board at an open meeting on October 4. The scheduled Board meeting was the hearing; the meeting of September 29 was not a hearing, in the legal sense; it was clearly called and conducted pursuant to Section 55 to consult and advise with the interested citizens, and complied with the provisions of that section.

The appellants and other interested parents had six days notice of the Board hearing of October 4. In some situations that notice might be deemed inadequate in point of time, but the adequacy of the notice must be determined in the light of the particular circumstances. In this case, the school term had just begun. The constantly increasing population of the county confronted the Board with an emergency situation, because of the unexpected overcrowding of the Forestville School. Unduly large classes resulted, and double shifts would have been necessary if prompt alleviative measures were not taken. The Board may well have deemed it to the best interests of the children that the proposed reassignment of school attendance be promptly consummated, to relieve the overcrowding and to permit the transferred children to become adjusted to their new school as soon as possible after the beginning of the term. On the facts, we hold the notice of that meeting was adequate.

The appellants contend that the hearing on October 4 was improper because a request had been made on their behalf for a continuance so that they could be represented by counsel. The granting of a continuance is within the sound discretion of an administrative agency, as it is in the comparable discretion of a trial court. *State Roads Comm'n v. Wyvill*, 244 Md. 163, 168,

223 A. 2d 146 (1966). There was sufficient time for the appellants to employ counsel to appear at the hearing, if they had wished to do so. We find no abuse of discretion.

The appellants contend that they did not have a fair opportunity to be heard at the Board meeting, because of an alleged statement by a Board member at the September 29 meeting that the opponents of the proposal would be allowed only one spokesman at the hearing. Dr. Schmidt, the County Superintendent of Schools, testified that, at the October 4 meeting, representatives of three groups of parents were heard. Mr. Beatty, the president of the Board, testified that, in his experience, the Board has never denied anyone the right to be heard, except that in some meetings "in which there is a lot of emotion" after a designated spokesman has addressed the Board on behalf of his group "sometimes in order to get order out of chaos we almost have to rule some people out of order." At the meeting on October 4, Mr. Beatty testified, he inquired several times if there were others who would like to be heard, and three or four persons spoke after their designated representatives. The testimony of Dr. Schmidt and Mr. Beatty was not contradicted.

We find nothing illegal or improper in the Board's procedure. Hearings of School and Zoning Boards are often microcosmic town meetings, where interested citizens may not be represented by lawyers, and where, in the words of Chief Judge Prescott, for the Court, "individual emotions run high." *Hyson v. Montgomery County Council*, 242 Md. 55, 69, 217 A. 2d 578 (1966). As *Hyson* points out, under such circumstances, administrative agencies must have the discretion reasonably to regulate the length of time afforded parties to present their evidence. The practicality of group representation by specified spokesmen is recognized in the more formal rules of court procedure under which class actions are permitted. The appellants' bill of complaint in this very case is a class action.

The appellants' contention that their rights were violated because their request for a transcript of the hearing was refused is unmeritorious. The short answer to the contention is that, as the record makes clear, no stenographic or other verbatim transcript of the meeting was taken. None was required by law. An assistant secretary of the Board took notes; the same op-

portunity was available to anyone who attended the meeting. Admittedly, there were several opponents of the proposal who attended in addition to their spokesman.

## III

The remaining contentions of the appellants go to the validity of the Board's action. That action, as has been stated, was legislative in nature. This Court has consistently recognized that, in general, courts will not attempt to substitute their judgment for the expertise of school boards, acting within the limits of the discretion entrusted to them. As Judge Alvey, for the Court, said in *Wiley v. School Comm'rs*, 51 Md. 401, 406 (1879):

> "If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficent purposes of the law."

See also *School Comm'rs of Caroline County v. Breeding*, 126 Md. 83, 90, 94 Atl. 328 (1915) and *Dixon v. Carroll County, supra*. Courts in other jurisdictions have refused to interfere with the reasonable exercise of a school board's discretion in the assignment of children to particular schools. *Brown v. Bailey*, 238 Ky. 287, 37 S. W. 2d 58 (1931); *State ex rel. Lewis v. Board of Educ.*, 137 Ohio St. 145, 28 N. E. 2d 496 (1940); *People v. Board of Educ.*, 26 Ill. App. 476 (1888). The appellants have the burden of showing that the Board's action was illegal or an abuse of discretion, and this burden they have not met.

There was evidence that, at the October 4 hearing, one member of the Board stated that the tenants of the Hy-View Terrace Apartments were transients in the area, and not taxpayers, and that there was no reason why they should be given any special consideration. Had the Board's action been shown to

have been motivated by a discrimination between children who live in apartments and children who live in private homes, a different legal situation would have been presented. However, Mr. Beatty's uncontradicted testimony was that, at the close of the hearing, he stated emphatically that the Board never makes any such discrimination. The children who lived in the apartment house were only a minority of those affected by the Board's action. As Judge Markell said for the Court in *Williams v. McCardell*, 198 Md. 320, 330, 84 A. 2d 52 (1951), sometimes the opinion of a board or testimony of one of its members may show that its action was arbitrary or unlawful, but ordinarily courts review the action of the board, not its opinion. In this case, the remark of one member of the Board during the proceeding, repudiated on behalf of the Board at the end of the hearing, and, in any event, not applicable to the majority of the children affected by the Board's action, is not to be deemed the opinion of the Board or as affecting the validity of its action.

The appellants' contention that the Board's action was due to its desire to adjust the racial population in the Arrowhead School, to which the children involved were transferred, is unsupported by any probative testimony, and was unequivocally denied by the County Superintendent, the Assistant Superintendent, and the president of the Board. As Judge Powers pointed out in his opinion, if the Board's action was taken in the reasonable exercise of its discretion, in an effort to relieve overcrowded conditions, it is immaterial that an incidental effect of that action resulted in an adjustment of a racial imbalance.

The objections of the appellants in the court below to the reassignment of their children were based on the additional distance they would have to ride and what seemed to the protesting parents the availability of another school, North Forestville, within walking distance of the apartment in which they lived.[3] At the opening of the school year, in September 1966, the Forestville Elementary School, which the pupils of the protesting parents attended, with a capacity of 510 children, had

3. The record strongly indicates that at the meeting on September 29 the objections of the protesting parents were largely based on the racial pupil population of the Arrowhead School.

an enrollment of 627. The Arrowhead Elementary School, with a capacity for 570 children, opened the term with an enrollment of only 410. The North Forestville School opened with a population substantially equal to its capacity, but the Board envisaged that its population would soon be increased because of apartments being built in the neighborhood; in the oral argument before us, counsel for the Board stated, without contradiction, that those apartments are now occupied. The distance from the Hy-View Apartments to the Forestville School is approximately two miles; to the Arrowhead School it is approximately four miles. The children were sent by bus to the Forestville School and are being sent by bus to the Arrowhead School; the additional time involved is only a few minutes.

We deem it unnecessary to recapitulate the reasons given at the hearing below why the Board took the action it did. Those reasons and the legal conclusion to which the testimony led were well summarized by Judge Powers in his opinion, as follows:

> "The testimony in this case shows—and this is undisputed—that the Board of Education, in its proper administration of the school system and in its effort to operate on as efficient a basis as possible, found that they had one school in this neighborhood, Arrowhead, which was substantially under capacity, which was obviously inefficient and it would certainly be incumbent on the Board to do something about this, particularly in view of the fact that at a school in the same general area, namely, Forestville Elementary, they had students there which greatly strained the capacity of the school. According to the testimony under those conditions, as I recall, at least one class had forty-some-odd students to one teacher and others well above thirty so that the Board then had the alternative of either transferring students or going on a double shift. The Board concluded that the transfer of students was more desirable than going on a double shift, and I hold that that is certainly acting entirely within the discretion of the Board.

> "The next question for the Board to consider was how they would shift the students from a school which

had more than its capacity to one which was operating under capacity. According to the undisputed testimony here, what they considered were five possibilities * * *

"Of course, if the Board took the alternatives of adding a bus and bussing children who were now walkers, it would probably have some kind of a taxpayer's suit against it for putting on an additional bus when it wasn't necessary. Whether it did or not, I conclude that it is within the discretion of the Board to have adopted the third possibility which involved the Hy-View Terrace Apartments and Phelps Subdivision children, and I conclude that its action in doing that was neither illegal nor was it arbitrary or capricious * * *

"[T]he point is whether the move was reasonable and within the discretion of the Board. The test is not even that there may have been other plans that would have worked equally well, or may, in the opinion of some, have been better; the test is whether the action which was taken was arbitrary, capricious or illegal. I conclude that it was not and that if any of the other alternatives had been taken there would very probably be people complaining about that. It is a thankless job that the Board of Education has when it finds it necessary to move students from one school to another, particularly during the school year. In a rapidly growing county, however, that is sometimes necessary. The paramount consideration is the proper education of the students, and I conclude that the action of the Board did not run counter to that primary consideration and was not improper under the circumstances * * *"