## KERPELMAN *v.* BOARD OF PUBLIC WORKS OF MARYLAND ET AL.

[No. 364, September Term, 1970.]

*Decided April 12, 1971.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Leonard J. Kerpelman* for appellant.

*Thomas P. Perkins, III,* with whom were *Robert G. Smith* and *Venable, Baetjer & Howard* on the brief, for appellee Maryland Marine Properties, Inc. *Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee Board of Public Works of Maryland.

BARNES, J., delivered the opinion of the Court.

In this appeal from the Order of the Circuit Court for Worcester County (Prettyman, J.), dated August 31, 1970, sustaining the demurrers of two of the appellees, Maryland Marine Properties, Inc. (Maryland Marine)

and the Board of Public Works of Maryland (Board), without leave to amend, to the bill of complaint filed by the appellant, Mrs. Elinor H. Kerpelman, the decisive question is whether or not Mrs. Kerpelman had standing to sue. Having concluded that she does not have such standing, we do not reach the other interesting questions of the constitutionality of Code (1965 Repl. Vol.), Art. 78A, § 15 (the Statute), and of the propriety of the actions of the Board under that statutory provision and laches.

Mrs. Kerpelman's bill of complaint, filed on September 30, 1969, alleged in paragraph 1 that she "is a taxpayer of the State of Maryland, and a resident thereof, in Baltimore City; this suit is brought on her own behalf, and on behalf of all others similarly situated." She then alleges in paragraph 2 that the Board is given authority by the Statute to dispose of lands of the State of Maryland by sale or otherwise, provided that this is done for " 'a consideration adequate in the opinion of the Board. . . .' " Also, by Art. 6 of the Declaration of Rights of the Maryland Constitution, the members of the Board, individually are " 'Trustees of the Public' " in all that they do and must reasonably exercise this fiduciary duty, particularly in regard to their stewardship of property.

It is then alleged in paragraph 3 that in 1968 contrary to the Art. 6 Trusteeship, and without the necessary opinion as to adequacy, the Board—then composed in part of different membership—but being the same constitutional and statutory Board as the present Board, conveyed 190 acres of land then the property of the people of Maryland to the defendant, James B. Caine, Inc.[1] The Board also conveyed to the defendant and appellee, Maryland

---

1. The Chancellor passed an order on September 22, 1970, sustaining the demurrer of James B. Caine, Inc., without leave to amend, for the same reasons assigned in its opinion and order of August 31, 1970; but the order for appeal was not filed until October 26, 1970, or more than the 30-day period provided for appeal under Maryland Rule 812. The defendant and appellee, James B. Caine, Inc., moved to dismiss this appeal pursuant to Rule 835 b (3); and this Court dismissed this appeal on November 16, 1970.

Marine Properties, Inc., 197 acres of Maryland lands, or did so by mesne conveyances "both for a totally inadequate and insufficient consideration, compared with the then fair market value or intrinsic value of the said lands, and the said Board then had no opinion upon the monetary adequacy of the consideration proffered, or had a mistaken, unreasonable, or totally false opinion of such adequacy," so that the conveyances were illegal and void for failure to comply with the precondition set forth as to adequacy in the Statute and as a violation of the Art. 6 Trusteeship. It is also alleged in paragraph 3 that the consideration for the conveyances was also totally inadequate and insufficient considering "the ecological consequences of the sale, and the direct consequent effect upon the natural resources of the State of Maryland, which are owned" by Mrs. Kerpelman and all others similarly situated and which are held in trust for her and the class she represents in the suit, by the State of Maryland and its public officials including the Board.

The lands mentioned in paragraph 3 are described in paragraph 4 as situate in Worcester County and are marshlands and wetlands, *i.e.*, submerged and partially submerged lands, marshes, and shallows, peculiarly adapted to the production of certain important forms of marine life and constituting an important link in the food chain of many economically valuable wild species of fish, animal and bird life, which abound in Maryland and upon the waters of the State, "which are owned in common, and used by all of the members of the class on whose behalf this suit is brought." These marshlands and wetlands are being filled in and built up by those to whom they were conveyed, it is alleged in paragraph 5, so that their character as such lands is being completely obliterated with the consequent destruction of the fish and animals species already mentioned.

In paragraph 6, it is alleged that the lands conveyed to Maryland Marine were sold by an exchange for other marshlands and wetlands which are "cumulatively only one-half as productive of the important species of ma-

rine life and products as those which were conveyed" to Maryland Marine. The land thus exchanged was worth only $41,000.00 while the lands conveyed to Maryland Marine "were worth two hundred times as much in fair market monetary value." The lands sold to James B. Caine, Inc. were alleged to have been sold to it for the "completely and totally inadequate money consideration" of $100.00 an acre and such lands were worth approximately 500 times as much in fair market value as the monetary consideration received by the Board. The monetary consideration, it was alleged in paragraph 7, was, in each case, "so completely and totally inadequate as was known to all parties at that time as to amount to a conveyance of the land by the Defendant Board of Public Works fraudulently, or by mistake, or by undue influence exerted upon it."

In paragraph 8, it was alleged that Mrs. Kerpelman, the plaintiff, and "all others similarly situated" will be and have been irreparably injured and damaged by the two conveyances mentioned "in that valuable property, which is ecologically irreplaceable, owned by them or held in trust for them" by the Board, has been disposed of and closed off to the wild natural resource cycle of which it was a "most essential, irreplaceable part." The plaintiff and all others similarly situated are deprived of their use and benefit of these lands for "a totally inadequate contribution by new owners of the said lands into the state treasury by way of real estate taxes paid and to be paid, the value of which taxes will never compensate for the deprivation of said lands and the irreparable damage and injury which will be caused to the natural products and natural resources of the State of Maryland by the ecological disruption caused by the filling and loss of said wetlands, marshlands and shallows; which disruption may reasonably be expected to cause or substantially contribute to, natural resource and wildlife losses of many millions of dollars measured in financial terms alone."

Paragraphs 9 and 10 allege that Maryland Marine and James B. Caine, Inc. are "proceeding with great speed

to fill in and eradicate as marshlands and wetlands" the lands in question and that the plaintiff has no adequate remedy at law.

The prayers for relief are that:

1. The case be advanced for immediate trial and hearing on any motions filed.

2. A mandatory injunction be issued requiring Maryland Marine and James B. Caine, Inc. to reconvey to the State of Maryland the lands in question.

3. The Court declare that the conveyances of the lands in question be declared to be null, void and of no effect and that "title remains in the People of Maryland."

4. The plaintiff have other and further relief.

Maryland Marine filed a demurrer to the bill of complaint on October 20, 1969, alleging three grounds for demurrer:

1. No facts were alleged sufficient to constitute a cause of action or entitling the plaintiff to any of the relief prayed for in the bill of complaint.

2. The plaintiff failed to allege facts sufficient to establish her standing to sue in the case.

3. The plaintiff is barred by laches.

The Board, on October 21, 1969, also filed a demurrer stating in allegations 1 through 4 that no cause of action in equity was alleged entitling the plaintiff to the relief prayed for in the bill of complaint; that the Statute (set out in full) imposed no limitation upon the power of the Board to dispose of the property involved in the suit and the Board was authorized as a matter of law to dispose of that property.

5. There was no allegation that the alienation of State property was not " 'for a consideration adequate in the opinion' " of the Board as provided in the Statute.

6. There were no allegations that the procedure used by the Board in connection with the disposition of the property was "improper, defective or in any manner contrary to law."

7. The exercise of the Board's discretion, if not exer-

cised fraudulently or corruptly, is not subject to review by a court of equity.

After the submission of legal memoranda by counsel for the parties and argument, the Chancellor, in a well-considered, written opinion concluded, *inter alia*, that the demurrers should be sustained, without leave to amend, because the General Assembly had properly amended the common law by the Statute which gave the Board the power and discretion to make the conveyances in question and that the "strict trust theory" proposed by the plaintiff was not applicable. The Chancellor did not find it necessary to consider the standing of the plaintiff to sue.

As we have indicated, we find the threshold question of the standing of Mrs. Kerpelman to sue to be the determining issue in the appeal and, inasmuch as we are of the opinion that she has alleged no facts which entitle her to sue, we shall affirm the Chancellor's order of August 31, 1970, for this reason rather than for the reasons considered in the Chancellor's opinion about which we express no opinion. Cf. *Citizens Committee v. County Commissioners*, 233 Md. 398, 197 A. 2d 108 (1964).

Mrs. Kerpelman first alleges her standing to sue as a taxpayer of the State of Maryland, residing in Baltimore City. There is no allegation that she is a taxpayer of Worcester County and, as a resident of Baltimore City, the inference would be that she was not a Worcester County taxpayer. Whatever interest she has in the subject matter as a taxpayer of the State generally is the interest which any other taxpayer of the State generally has in that subject matter. The property in question is located in Worcester County but Mrs. Kerpelman alleges no interest in that property as a local taxpayer.

In this type of situation, Judge McWilliams, for the Court stated the applicable rule in regard to the standing of a taxpayer to sue in *Stovall v. Secretary of State*, 252 Md. 258, 263, 250 A. 2d 107, (1969), as follows:

"In Maryland taxpayers have standing to challenge the constitutionality of a statute when

> the statute as applied increases their taxes, but
> if they cannot show a pecuniary loss or that the
> statute results in increased taxes to them, they
> have no standing to make such a challenge."

See also *Murray v. Comptroller*, 241 Md. 383, 391, 216 A. 2d 897 (1966) ; *Citizens Committee v. County Commissioners*, 233 Md. 398, 197 A. 2d 108 (1964) ; and *Baltimore v. Gill*, 31 Md. 375, 394 (1869).

When the allegations of the bill of complaint are considered, it appears that the challenged transactions have —or will—result in the placing of additional land on the tax rolls which will *increase* the tax base of the State so that the State taxes paid by Mrs. Kerpelman will actually *be reduced* as a result of those transactions. There are general allegations that the conveyances will have a damaging effect upon the marine ecology of the State, but there are no allegations of facts which would support these general allegations and, in any event, there are no allegations which indicate how this will result in the payment of higher State taxes by Mrs. Kerpelman.

The allegations of the bill of complaint rather indicate that Mrs. Kerpelman is concerned with the policy of the State of Maryland in regard to the preservation of the marshlands and wetlands, and opposes the policy existing when the bill of complaint was filed.[2] Her interest in this aspect of the matter, however, is not alleged to be different from that generally of citizens of the State; and this Court has held that there must be allegations (and ultimate proof) of a special interest, different from the general interest of a member of the public, in the plaintiff to enable a plaintiff to challenge a statute or the action of public officials acting under a statute. *Houck v. Wachter*, 34 Md. 265, 6 Am. Rep. 332 (1871) which has been cited and followed in over twenty-five Maryland cases including *Bauernschmidt v. Standard Oil Co.*, 153

---

2. The General Assembly of Maryland by Chap. 241 of the Laws of 1970 has effectuated substantial changes in the State's policy in this regard.

Md. 647, 139 A. 531 (1927) and most recently *Rogers v. Md.-Nat'l Cap. P. & P. Comm'n,* 253 Md. 687, 253 A. 2d 713 (1969).

An analogous case to the present case is *Citizens Committee v. County Commissioners, supra,* in which persons opposed to the policy of the State in regard to slot machines in Anne Arundel County sought, as taxpayers, to challenge the validity of the Maryland Statutes and Anne Arundel County Ordinances permitting the licensing of slot machines. There were allegations of general injury to the State from the operation of these gaming devices; but we held that, inasmuch as the allegations and proof indicated that the revenue derived by the County from such licensing *decrease* the County tax rate and the taxes payable by the plaintiffs in the *Citizens Committee* case, the plaintiffs, *as taxpayers,* had no standing to sue and that, as members of the public, they had no standing to sue because their alleged injury was no different from that suffered generally by the public, and there must be an allegation and ultimate proof of *special injury* to establish standing to sue.

The instant case is to be distinguished from our decision in *Thomas v. Howard County, Maryland,* 261 Md. 422, 276 A. 2d 49 (1971), in which the allegations of the bill of complaint were sufficient to establish, prima facie, injury to the plaintiffs as taxpayers and there were no allegations on the face of the bill of complaint indicating that the challenged action resulted in a *decrease,* but that it *increased* the taxes payable by the plaintiffs.

Mrs. Kerpelman, secondly, in paragraphs 2 and 3 of the bill of complaint seeks to establish her standing to sue upon the novel theory that she, as a member of the public of Maryland, is a beneficiary of a "public trust" flowing from Art. 6 of the Declaration of Rights of the Maryland Constitution stating that persons invested with the legislative or executive powers of government "are Trustees of the Public, and, as such, accountable for their conduct. . . ."

Article 6 is hortatory in nature — see *Bernstein v.*

*Board of Education of Prince George's County,* 245 Md. 464, 226 A. 2d 243, 248 (1967)—and sets forth the well-established doctrine that the duties of public officials are fiduciary in character and are to be exercised as a public trust. The lands in Maryland covered by water were granted to the Lord Proprietor by Section 4 of the Charter from King Charles I to Caecillius Calvert, Baron of Baltimore, his heirs, successors and assigns, who had the power to dispose of such lands, subject to the public rights of fishing and navigation. *Browne v. Kennedy,* 5 H & J. 195 (1821). By virtue of Art. 5 of the Declaration of Rights in the Maryland Constitution, the inhabitants of Maryland became entitled to all property derived from and under the Charter and thereafter the State of Maryland had the same title to, and rights in, such lands under water as the Lord Proprietor had previously held. These lands were held by the State for the benefit of the inhabitants of Maryland and this holding is of a general fiduciary character. Art. 6 of the Declaration of Rights, however, does not purport to change, modify or enlarge the nature of this holding by the State or to give to a citizen of Maryland any different status to challenge a statute or the activities of public officials acting under a statute than exists in regard to any other matters of State concern. No decision of this Court is cited to sustain the construction of Art. 6 urged upon us by Mrs. Kerpelman and we know of no such decision. In our opinion, it would be an unwarranted departure from our decisions and those of our predecessors, already mentioned, on the subject of standing to challenge the constitutionality or application of a statute, to adopt the construction of Art. 6 urged upon us by the appellant. Her remedy, as a member of the general public without suffering injury as a taxpayer or having a special interest in the subject matter, lies with the legislative branch of the State government and not with the courts.

> *Order of August 31, 1970, affirmed, the appellant to pay the costs.*