# THOMAS ET AL. v. HOWARD COUNTY, MARYLAND ET AL.

[No. 353, September Term, 1970.]

*Decided April 12, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John J. Hirsch,* with whom were *Paul E. Gaeng* and *Elizabeth M. Eckhardt* on the brief, for appellants.

*James N. Vaughan,* with whom was *Thomas E. Lloyd* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The Circuit Court for Howard County (Macgill, C. J.) on March 26, 1970, sustained, without leave to amend, a demurrer of the appellees and defendants below—Howard County, its County Council, its Chief Executive, its Director of Public Works, its Chief of the Bureau of Inspections and its Chief Inspector of the Bureau of Inspections, Licenses and Permits—to the bill of complaint filed by the appellants, Wilbur E. Ficke (an original plaintiff but who has withdrawn from this appeal), Robert Thomas and the Plumbers and Gasfitters U. A. Local Union No. 48 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO (Local Union No. 48) and dismissed the bill of complaint by a

decree signed and filed on August 27, 1970. The principal question in this appeal is whether the bill of complaint, on its face, alleges a cause of action. We have concluded that it does and shall reverse and remand the case for further proceedings.

The bill of complaint alleges that the two individual plaintiffs, Ficke and Thomas, "are residents and taxpayers" of Howard County, a Municipal Corporation of the State of Maryland (County), and that they "own property in the County on which they pay County and State real property taxes in addition to taxes on their annual income * * *." It is also alleged that they are registered journeymen plumbers duly licensed in Maryland in accordance with Code (1957), Art. 43, §§ 326, 333 and 336. They work at the plumbing trade in the County as well as other counties and in Baltimore City. They are members of Local Union No. 48. Because of their residency in the County, they receive from it water, sewer and sewage disposal services and their "health, welfare and comfort will be directly affected by the improper installation of sanitary waste lines, storm water lines, and acid waste lines and other plumbing systems by those unlicensed and unskilled in the plumbing trade" in violation of the Howard County Plumbing Code as well as of Code (1957), Art. 43, §§ 326 and 333. They further allege that "as taxpayers they have a further direct and real inter est in the matter and controversy because of the real and substantial loss to Howard County of permit fees as a result of the lack of enforcement of the County Plumbing Code. . . ." It is also alleged that, as a further result, "their employment opportunities in Howard County are and will be lessened and impaired with the direct personal loss of wages" and, further, that as a result of the financial loss to their certified collective bargaining representative, Local Union No. 48, their voice and effectiveness in matters concerning wages, hours and other conditions of employment in the plumbing industry will be adversely affected as well as personal losses to them of employer contributions based on hours worked made

to pension, health and welfare funds in their behalf under collective bargaining agreements.

In paragraph 2 of the bill of complaint Local Union No. 48 is described as an unincorporated labor organization under Section 7 of the Labor Management Relations Act of 1947 (29 U.S.C.A. 157) and is an association of individuals licensed to work at the plumbing trade and regularly doing business in the County. It is authorized to sue and be sued as an entity and on behalf of its members. Its members "are residents and taxpayers" in the County and regularly work at the plumbing trade in the County. It has a "direct legal interest and stake" in the controversy and "will suffer direct and immediate financial injury" along with its members by the "inapplication and lack of enforcement" of the County Plumbing Code in that employment opportunities under collective bargaining agreements negotiated by it on behalf of its members "are being dissipated and impaired" in the County "resulting in a substantial loss to its members in wages, and, necessarily resulting in a direct loss of revenue" to Local Union No. 48 "of dues paid to it by its members based upon the number of man hours they work"; this financial loss will impair its functions and obligations to its members and they are "being adversely affected by the deliberate, willful and negligent lack of enforcement of the Howard County Plumbing Code." Local Union No. 48 will suffer an infringement upon its certification under the Federal Statute with its statutory right to bargain collectively for its licensed journeymen plumbers in the County.

In paragraph 3, the plaintiffs allege that they filed the suit "in behalf of themselves and all persons similarly situated." After describing in paragraph 4 the various defendants and their respective relevant duties under the County Charter, the plaintiffs allege in paragraph 5 that the County Council in the exercise of powers granted by the County Charter, adopted Council Bill No. 19 in its 1969 Legislative Session (Legislative Day No. 10), which Bill [it was enacted on July 14, 1969] adopted by ref-

erence the County Plumbing Code and Rules and Regulations governing plumbing and drainage work, dated January 1, 1969, which was printed by the County Central Services. The broad definitions of "Plumbing" and "Plumbing System" in Chapter 1 are then set forth in full.

Paragraph 6 alleges that the Plumbing Code sets forth certain basic principles as follows:

> " 'The basic principles of this code are enunciated as basic goals in environmental sanitation worthy of accomplishment through properly designed, acceptably installed, and adequately maintained plumbing systems. Some of the details of plumbing construction must vary, but the basic sanitary and safety principles are the same. The results desired and necessary to protect the health of the peoples are the same everywhere. Furthermore, as unforeseen situations arise which are not covered in the body of the Code, the principles shall serve to define the intent.' "

Paragraphs 7, 8 and 9 of the bill of complaint are as follows:

> "7. That the Respondents are willfully, deliberately, negligently and knowingly exceeding the authority granted to them by the Charter of Howard County and the Ordinances and Resolutions of Howard County; and further that in so doing they are acting outside the scope of their granted authority in that they are permitting the laying of sanitary drainage lines (sanitary sewer drainage piping for the conveyance of fecal matter from water closets and for the drainage of urinals or fixtures having similar functions), and the laying of storm sewer drainage lines, all of which within the property line and in violation of the Howard County Plumb-

ing Code adopted pursuant to Bill No. 19 aforesaid in that the work is not being performed under permit issued to a registered master plumber and by licensed journeymen plumbers and their apprentices, at the new General Electric plant construction job located and lying in the 6th Election District, 5th Precinct of Howard County, State of Maryland; and further, by a utility contractor not qualified to work at the plumbing business in Maryland as provided for in Article 43, Section 326, Annotated Code of Maryland; and further by permitting the work to be done by unqualified laborers and others in the employ of said utility contractor, rather than by licensed journeymen plumbers and their apprentices under the direction and control of a duly certified and registered master plumber as required by said Article 43, Sections 326, 333, Annotated Code of Maryland; and further, such action is detrimental to the health and welfare of the Complainants and other residents and taxpayers of the County.

"8. That the Complainants believe and therefore allege and aver that the Respondents are aware, or should be aware, that the General Electric plant, in addition to the sanitary drainage facilities and the Storm drainage facilities as aforesaid, and also in addition to potable water lines for plumbing fixtures, appliances and appurtenances, will have numerous lines for acid waste disposal systems, all of which if not installed by licensed journeymen plumbers under the responsible and expert supervision of a duly certified and registered master plumber, could and will result in a real and serious health hazard to the community arising through the negligent crossconnecting of sanitary lines, potable water lines, storm water lines and waste pipe lines, resulting in and creating conditions

whereby water (potable) lines may become contaminated with nonpotable water lines further resulting in serious and irreparable harm and damage epidemically affecting the health, welfare, comfort and safety of the community; and the pollution of streams and rivers with raw sewage, waste acid and other liquid wastes.

"9. That the Complainants believe and therefore allege and aver that on or about the 25th day of September, 1969, the said Complainants' representatives did meet with Melvin L. Klappenberger, Chief Inspector, Bureau of Inspections, Licenses and Permits, for the expressed purpose of bringing to the attention of this said County official the wrongs aforesaid; as well as to request that the Plumbing Code of Howard County be strictly enforced; and further, that the said Respondents did knowingly and deliberately and negligently refuse to apply and enforce said Code; and further the Complainants believe, allege and therefore aver that this deliberate and wilful refusal to enforce the Howard County Plumbing Code on the part of the Respondents has resulted in, and will continue to result in a serious health hazard as well as a substantial loss in revenue and funds to the County due to the officers, agents and employees of the County not issuing required permits when such work as aforesaid is being performed in the County, thus adversely affecting the tax rate of the said Complainants and each and every taxpayer similarly situated."

The plaintiffs prayed for (1) a mandatory injunction, both pendente lite and permanent, to require the defendants "to strictly enforce" the County Plumbing Code, "particularly with regard to the General Electric construction job aforesaid"; (2) a mandatory injunction that in order to enforce the Plumbing Code, they "reject

all completed and partially completed work" which violates any provision of the Plumbing Code and that they order the work to be installed in accordance with the Plumbing Code and "under a permit issued to a registered master plumber and carried out and performed by licensed journeymen plumbers and apprentices"; (3) a negative injunction restraining the defendants from "allowing construction and work such as aforesaid at the General Electric job, from being performed in the County without the required permits, and without being done by licensed journeymen plumbers and their apprentices under the supervision of a duly certified registered master plumber" and under permit issued to the master plumber by the County Bureau of Inspections, Licenses and Permits; and (4) other and further relief.

The defendants demurred to the bill of complaint on a number of grounds which may be summarized under three headings: (1) although a writ of mandamus is not specifically prayed, the bill of complaint has the heading, "BILL OF COMPLAINT FOR MANDAMOUS [sic] AND INJUNCTION" and hence the action should have been at law; (2) the available administrative remedies have not been sought by appeal to the Board of Appeals; and (3) the action of the defendants, as County officials, in permitting plumbing work to be done on the General Electric site by non-registered plumbers was a discretionary act with which the Courts will not interfere.

The Chancellor was of the opinion in his memorandum opinion of March 26, 1970, that none of the grounds of demurrer already mentioned had merit and suggested to counsel that the important question was in regard to the standing of the plaintiffs to maintain the suit, referring them to various opinions and withholding a ruling on the demurrer until counsel had an opportunity to submit memoranda or further arguments along the lines indicated.

Counsel apparently did this and on May 8, 1970, the Chancellor filed his second memorandum opinion indicating his opinion that the plaintiffs lacked the necessary

standing to maintain the suit. As we have indicated, a decree sustaining the bill of complaint, without leave to amend, and dismissing the bill of complaint and requiring the plaintiffs to pay the costs was signed and filed on August 27, 1970, from which the plaintiffs filed a timely appeal to this Court.

We are of the opinion that the individual plaintiffs established on the face of their bill of complaint sufficient standing as taxpayers of the County to maintain the suit. The individual plaintiffs, as well as Local Union No. 48, also contend that there are sufficient allegations for additional grounds of standing to maintain the suit, such as the position of the individual plaintiffs as residents of the County whose health is endangered by the alleged violations of the County Plumbing Code, and the unfair competition with the plaintiffs resulting from such alleged violations. We do not find it necessary to pass upon these alleged additional grounds for standing in view of our conclusion that the individual plaintiffs have standing as taxpayers to maintain the suit upon the allegations in the bill of complaint.

Inasmuch as the case comes to us from an order sustaining a demurrer to the bill of complaint, without leave to amend, we assume, for the purposes of the ruling, the truth of all material and relevant facts that are well pleaded in the bill of complaint. *Hall v. Barlow Corporation*, 255 Md. 28, 42, 255 A. 2d 873 (1969) ; *Lynn v. Goldman*, 216 Md. 562, 141 A. 2d 172 (1958).

We now turn to the allegations of the bill of complaint in regard to the injury to the individual plaintiffs as taxpayers.

As we have already stated, paragraph 1 alleged that Ficke and Thomas are taxpayers of the County and of the State of Maryland as owners of real property in the County and also as persons who pay income taxes on their annual incomes. It is also alleged that as taxpayers they have a direct and real interest in the matter in controversy because of the substantial loss to the County of

permit fees as a result of the lack of enforcement of the County Plumbing Code. In paragraph 9, it is alleged that the deliberate and willful refusal of the County to enforce the County Plumbing Code notwithstanding a meeting with the Chief Inspector at which the alleged wrongs were brought to his attention by the plaintiffs, results, not only in a serious health hazard, but also in "a substantial loss in revenue and funds to the County due to the officers, agents and employees of the County not issuing required permits when such work as aforesaid is being performed in the County, thus adversely affecting the tax rate of the Complainants and each and every taxpayer similarly situated."

In paragraph 3, as we have indicated, the plaintiffs allege that they file the suit on behalf of themselves "and all persons similarly situated."

These allegations—taken as true for the purposes of the demurrer—indicate, *prima facie,* that the individual plaintiffs are specially injured as taxpayers. It will be observed that the bill of complaint does not allege that the work at the General Electric job *is not being inspected* but that the County officials are unlawfully and knowingly exceeding their powers in permitting the installation of the sanitary and storm water facilities by unqualified laborers and others in the employ of the utility contractor rather than by qualified licensed journeymen plumbers and their apprentices and have willfully refused to issue the required permits which has resulted in a substantial loss of revenue to the County in addition to the creation of a health hazard. It is not necessary for the purposes of pleading that the *amount* of the loss of revenue be specifically set forth, although this was elaborated before us at argument by counsel for the appellants. The details of the loss of revenue like the details of the amount of taxes paid by the individual plaintiffs are matters of proof as and when the case is tried on its merits. It may be that at trial the plaintiffs may not be able to prove any loss to them as taxpayers or the County may establish by proof that there was no such loss; but in regard to these

matters, we obviously express no opinion. In several zoning cases we have discussed the difference between the sufficiency of allegations in regard to standing to challenge the action of the zoning authority and the ultimate proof on the facts that the complaining party has been adversely affected by the ruling of the zoning authority. See *Weir v. Witney Land Co.,* 257 Md. 600, 610, 263 A. 2d 833 (1970) ; *Baxter v. Montgomery County,* 248 Md. 111, 235 A. 2d 536 (1967) ; *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966).

The same type of situation exists in the present case. The allegations are sufficient to show standing as taxpayers; the proof may or may not ultimately sustain such standing.

We and our predecessors have gone rather far in sustaining the standing of taxpayers to challenge the alleged illegal and *ultra vires* actions of public officials. In *Gordon v. City of Baltimore,* 258 Md. 682, 688, 267 A. 2d 98 (1970), Judge Singley reviewed prior cases recognizing standing for taxpayers showing potential pecuniary damage. He referred to *Castle Farms Dairy Stores, Inc. v. Lexington Market Authority,* 193 Md. 472, 67 A. 2d 490 (1949) as perhaps the most liberal application of the test to date and stated:

> "There, the plaintiffs were taxpayers and stall owners who unsuccessfully sought to have the Act establishing the Lexington Market Authority declared unconstitutional. The Court held that they had standing as taxpayers:
>
> " 'If the Act is unconstitutional, the project is unlawful, and even though the City would not be obligated for the project, it presumably would incur some expense or loss in extricating itself and its property. As taxpayers, therefore, plaintiffs, are entitled to sue to enjoin such an unlawful project.' 193 Md. at 482."

The *Castle Farms* opinion also states: "As owners and claimants of rights in the market, they may also, in the same case, sue to protect their property rights. *Green v. Garrett*, 192 Md. 52, 63 A. 2d 326, 328. The conflict between any rights of plaintiffs in the market and their interests as taxpayers shows the artificial character of this suit, but does not bar it." (193 Md. at 482.) See *Reed v. McKeldin,* 207 Md. 553, 558, 115 A. 2d 281 (1955) ; *Funk v. Mullan Contracting Co.,* 197 Md. 192, 196, 78 A. 2d 632 (1951) ; *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482 (1949).

In our opinion, this is and has been a salutary policy conducive to the advancement of the public interest and should not be narrowed or impaired. We note with satisfaction that the Maryland view in this regard represents the general trend of the authorities in our sister states and especially in the Federal Courts where the restrictive holding by the Supreme Court of the United States in *Frothingham v. Mellon,* 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078 (1923) has been substantially eroded. See *Flast v. Cohen,* 392 U. S. 83, 88 S. Ct. 1942, 20 L.Ed.2d 947 (1968) ; *Data Processing Service v. Camp,* 397 U. S. 150 (1970) ; *Barlow v. Collins,* 397 U. S. 159 (1970).

See also K. C. Davis, *The Liberalized Law of Standing,* 37 U.Chi.L.Rev. 450 (1970) ; K. C. Davis, *Standing: Taxpayers and Others,* 35 U.Chi.L.Rev. 601 (1968) ; L. L. Jaffee, *Standing, Again,* 84 Harv.L.Rev. 633 (1971) ; and R. Berger, *Standing to Sue in Public Actions: Is it a Constitutional Requirement?,* 78 Yale L.J. 816 (1969).

The present case is to be distinguished from decisions of this Court in which the allegations of the bill of complaint—or the proof on the merits—indicated that the plaintiff would not suffer any injury *as a taxpayer*. See, *e.g., Baltimore v. Employers Association,* 162 Md. 124, 159 A. 267, 81 A.L.R. 342 (1932) ; *Ruark v. International Union,* 157 Md. 576, 146 A. 797 (1929) ; and *Kerpelman v. Board of Public Works of Maryland,* 261 Md. 436, 276 A. 2d 56 (1971).

The appellees contend that the County Plumbing Code is a regulatory measure adopted in the exercise of the police power and is not a Revenue Act. They further contend that the permit fees are collected to compensate the County for the expense of enforcing the County Plumbing Code. See *County Commissioners of Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135 (1943). These observations are correct, but the appellees incorrectly conclude from them that the failure to collect these fees can *never* result in an injury to a taxpayer. As we have indicated, the allegations in the bill of complaint allege a willful failure to issue the required permits and collect the permit charges and the permitting of unqualified persons to install the sanitary and storm water facilities. There is no allegation that no *inspections* were made and the presumption would be that such inspections— otherwise required by the County Plumbing Code—were made. But even if no such inspections were made, the permit fees not only cover the cost of inspection, *vel non,* but may also cover the overhead of maintaining the entire staff for the enforcement of the County Plumbing Code, so that even on that assumption there could well be some financial loss to the County taxpayers from the willful failure to issue the required permits and collect the permit fees. See *Pure Oil Co. v. Minnesota,* 248 U. S. 158, 39 S. Ct. 35, 63 L. Ed. 180 (1918) ; *New Mexico v. Denver & Rio Grande R. Co.,* 203 U. S. 38, 27 S. Ct. 1, 51 L. Ed. 78 (1906) ; 127 A.L.R. 330.

The allegations of the bill of complaint generally sufficiently indicate a requirement in the County Plumbing Code that permits are required, have been willfully not issued and that the work involved is being done by unqualified persons. All this, too, is admitted as true for the purposes of the demurrer.

The appellees, however, earnestly argued before us that the County officials had acted in a lawful and proper manner in view of the provisions of § 129.11 of the BOCA Basic Building Code, 1965, apparently adopted as the Building Code for the County which provides:

*"Under Direct Supervision.* When plans for the execution or alteration of a building are prepared by a licensed professional engineer or registered architect which contemplates structural work or structural changes involving public safety or health and such plans are accompanied by an affidavit of the applicant that he has supervised the preparation of the architectural, structural and mechanical design plans and that he will supervise or check all working drawings and shop details for the construction, and that the structure will be built under his field supervision and in accordance with the approved plans, and that such plans conform to all provisions of the basic code and the legal rules adopted under its provisions and that all the materials used in the construction will be controlled materials as defined in Sections 701 and 772, the building officials may waive examination of the plans and full inspection of the construction and may issue a permit for the performance of the work."

The appellants, on the other hand, contended that even if this contention were before us, § 129.11 applies only to matters arising under the *Building Code* and not to matters arising under the County Plumbing Code and that, in any event, the particular and specific provisions of the County Plumbing Code would control if inconsistent with § 129.11 of the Building Code.

We note that the last clause in § 129.11 indicates that even under that section a permit may be issued for the performance of the work and, inasmuch as the allegations of the bill of complaint indicate that no permit had been issued and the permit fees collected, although lawfully required, it may be that there may be a financial loss to the individual plaintiffs, as taxpayers, even if § 129.11 were applicable.

The short answer to these contentions is that they are

not before us for decision and we express no opinion in regard to them. The Chancellor quite properly did not consider them on the demurrer since they did not appear upon the face of the bill of complaint and under Maryland Rule 885 we ordinarily do not consider matters not passed upon by the lower court. Upon the remand, the appellees may raise their contentions in this regard in their answer and present this possible defense on the merits or, after their answer is filed, they may possibly raise the suggested defense by way of a motion for summary judgment under Rule 610. Here again, we express no opinion upon the procedure to be followed by the appellees upon the remand. We do observe, however, that a demurrer to the bill of complaint was perhaps not the most felicitous method of raising any defenses the appellees might have.

> *Order of August 27, 1970, reversed and the case remanded to the Circuit Court for Howard County for further proceedings, the costs to be paid by the appellees.*