CITIZENS COMMITTEE OF ANNE ARUNDEL
COUNTY, INC., ET AL. *v.* COUNTY COMMIS-
SIONERS OF ANNE ARUNDEL
COUNTY ET AL.

[No. 135, September Term, 1963.]

*Decided January 30, 1964.*

The cause was argued before HENDERSON, HAMMOND, HOR-NEY, MARBURY and SYBERT, JJ.

*Rufus King* and *Malcolm B. Smith,* with whom were *Rice & King* and *Smith & Wohlgemuth* on the brief, for the appellants.

*Jerome F. Connell, Special Counsel,* for the Board of County Commissioners, one of the appellees.

*Ward B. Coe, Jr.,* with whom were *G. C. A. Anderson* and *Anderson, Coe & King* on the brief, for The Southern Maryland Development Company, Inc., the other appellee.

HORNEY, J., delivered the opinion of the Court.

This action for injunctive relief, instituted by an incorporated citizens committee and a group of individual county residents, citizens and taxpayers against the County Commissioners of Anne Arundel County, challenges the constitutionality and validity of such of the local laws, and the ordinances and resolutions passed pursuant thereto, as purport to authorize the operation of gambling devices and activities in the County. The Southern Maryland Development Company, Inc., to which the County Commissioners had issued licenses permitting the operation of slot machines, payoff pinball machines, console devices, commercial bingo, paddle wheels and wheels of fortune, was allowed to intervene as a party defendant. The laws attacked include, among others, Chapter 321 of the Laws of 1941,

Chapter 321 of the Laws of 1943, Chapter 1013 of the Laws of 1945, Chapter 625 of the Laws of 1949 and Chapter 3 of the Laws of 1954. All are now codified in the County Code. The chancellor heard the case at length, ruled that the statutes in question were constitutional and valid and dismissed the bill of complaint.

The questions presented on appeal by the appellants include contentions that the legislative acts did not, and were not intended to, authorize the licensing of gambling devices and activities; that the licensing of such devices and activities is unconstitutional in that it authorizes lottery grants in violation of Article III, § 36, of the Constitution of Maryland; that some of the acts are unconstitutional in that they violate Article III, § 29, of the Constitution prohibiting amendment of existing laws by reference to title and section number only; that all of the acts are invalid in that they were insufficiently and deceptively titled; that all constitute an unlawful delegation of authority; and that the acts, as well as the ordinances passed pursuant thereto, are invalid in that they are revenue raising measures in the guise of regulatory measures. The appellees, in addition to claiming that the operation of the licensed devices and activities are lawful, contend that neither the corporation nor the individual plaintiffs, as residents, citizens and taxpayers, had standing to maintain this suit.

We think that only one of the contentions—that of the appellees to the effect that the appellants do not have standing to maintain this suit—has to be considered on this appeal. It is not disputed that the corporate plaintiff, the citizens committee, is without standing to sue. And, under the circumstances of this case, we think that the individual plaintiffs, as residents, citizens and taxpayers, did not have the right to maintain this action.

While the appellants claim that the carrying out of the provisions of the alleged unconstitutional and invalid laws, ordinances and resolutions, has resulted in loss and damage to them and all other taxpayers in the county, they have failed to prove or show any special damage or loss which is peculiar to themselves as taxpayers or otherwise.

In *Ruark v. Engineers' Union*, 157 Md. 576, 146 Atl. 797

(1929), wherein taxpayers sought injunctive relief against an alleged violation of a Baltimore City statute, the Court extensively reviewed most of the previous Maryland cases pertaining to the right of an individual taxpayer to restrain a public wrong. Quoting from two earlier decisions, and citing numerous others, it was said at p. 588:

> " 'The rule, or principle of law, applicable and controlling in this class of cases, is well settled, that private citizens cannot restrain public wrongs, unless they allege and prove damage to themselves different in character from that sustained by the public generally, nor can taxpayers restrain official acts upon the mere ground that they are *ultra vires*. * * *' "
>
> " '* * * Public wrongs are not to be redressed at the suit of individuals who have no other interest in the matter than the rest of the public. To give them a standing in a court of equity, they must allege and show that by the wrong committed they suffer some special damage or that they have a special interest in the subject matter distinct from that of the general public.' "

It was further said at p. 589:

> "The special damage which the taxpayer of the political division sustains in a public wrong is the prospective pecuniary loss incident to the increase in the amount of taxes he will be constrained to pay by reason of the illegal or *ultra vires* act of the municipality or other political unit."

The subsequent decisions of this Court have consistently followed the same rule and have allowed the taxpayer to have injunctive or mandatory relief against public wrongs only when he had alleged and proven some special damage, or shown that he has a special interest, which is distinct from those of the general public. See, for example, *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 Atl. 922 (1932); *Baltimore Retail Liquor Package Stores Association v. Board of License Commissioners,* 171 Md. 426, 189 Atl. 209 (1937); *Green v. Garrett,* 192 Md.

52, 63 A. 2d 326 (1949); *Masson v. Reindollar,* 193 Md. 683, 69, A. 2d 482 (1949); *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950); *Funk v. Mullan Contracting Co.,* 197 Md. 192, 78 A. 2d 632 (1951); *McKaig v. City of Cumberland,* 208 Md. 95, 116 A. 2d 384 (1955); and *Dutton v. Tawes,* 225 Md. 484, 171 A. 2d 688 (1961).

The cases on which the individual appellants rely to justify their contention that where the suit raises a serious issue of the constitutionality of a statute, which is of great public importance, equity should "consider the entire case without questioning the right of appellants to bring any phase of it," we think are clearly distinguishable from the case at bar. We will consider such of them as might seem to support the appellants. In *Kelley, Piet & Co. v. Baltimore,* 53 Md. 134 (1880), it was said at p. 139 that "[i]n exceptional cases, where great principles or large public interests are involved, citizens or corporations may sue in behalf of themselves, and their fellow-citizens to arrest some projected violation of constitutional law or abuse of corporate authority." This suit, however, was not instituted by a taxpayer as such but was brought by an unsuccessful bidder on a city contract to enjoin its award to a competitor on the ground of fraud. Even if the statement is something more than the dictum it appears to be, it has no bearing on the case at bar. Moreover, it appears that in the *Kelley* case the Court had no intention of nullifying the rule it had enunciated in *Baltimore v. Gill,* 31 Md. 375 (1869), where it was said at p. 394 that "[i]t is certainly well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public," a principle of law that was restated in *Ruark v. Engineers' Union, supra,* and has been consistently followed for nearly a century. It is equally clear that the decision in *Pressman v. State Tax Commission,* 204 Md. 78, 102 A. 2d 821 (1954), in which separate declaratory judgment proceedings had been filed because an early decision was needed to determine the constitutionality of a tax statute, did not alter the rule with respect to the standing of litigants to sue. There, the standing of the respective plaintiffs was not an issue because both the taxpayer and municipality had a statutory right to challenge the validity

of the statute authorizing a reduction in the franchise tax on savings bank deposits. In *Hammond v. Lancaster* and *Dutton v. Tawes,* both *supra,* this Court considered the constitutionality of the respective statutes involved due to the public urgency, and then held that the tax paying complainants did not have standing. But, in the case at bar, where the statutes now under consideration have been in existence since at least 1945, we are not confronted with a statute, the constitutionality of which has to be determined on the basis of the public urgency of the situation.

The appellants also cite *Green v. Garrett, supra,* and *Castle Farms Dairy Stores v. Lexington Market Authority,* 193 Md. 472, 67 A. 2d 490 (1949), for their contention that a taxpayer does not always have to show pecuniary or special loss. In the *Green* case, the taxpayers were allowed to attack an ordinance under which the city made profits, but they were held to have standing because the contract of renting made under the ordinance created a nuisance which detrimentally affected the rights and property of the taxpayers. It is doubtful that the taxpayers would have had standing *but for* the nuisance. Certainly the case cannot be interpreted to mean that taxpayers do not have to show either a pecuniary or special loss, for in fact the taxpayers suffered a special loss as a result of the nuisance. At p. 59 (of 192 Md.), it was said that "there is no doubt that as adjacent residents and property owners, the appellants have an interest in restraining conditions arising out of the contract, which constitute a *special nuisance* to them." [Emphasis supplied.] In the *Castle Farms* case, where the taxpayers' suit questioned the validity of an ordinance providing for the establishment of a new Lexington Market, it was said at p. 482 that "[i]f the Act is unconstitutional, the project is unlawful, and even though the City would not be obligated for the project [under the ordinance the City was not obligated for any expenses], it presumably would incur some expense or loss in extricating itself and its property. As taxpayers, therefore, plaintiffs, are entitled to sue to enjoin such an unlawful project. * * * As owners and claimants of rights in the market, they may also, in the same case, sue to protect their property rights." There, it had been argued that a loss to the city would

constitute a pecuniary loss to the taxpayers. It had also been argued that the plaintiffs were stall holders in the old market and would be deprived of their property—a theory similar to the nuisance theory in the *Green* case. But, in the case at bar, there is no allegation or proof that the property rights of the taxpayers are adversely affected by the county gambling statutes. Therefore, both *Green* and *Castle Farms* are distinguishable in that neither a pecuniary nor special loss is shown to have accrued as the result of deprivation of property rights.

The appellants advance two arguments in support of their contention that they have standing to sue because they suffered, or will prospectively sustain, pecuniary loss and damage. First, they argue that part of the cost of administering the amusement licensing program comes from general funds. There was uncontroverted proof of this fact, but it was also shown that this situation was not restricted to the complaining taxpayers and that the revenue from the licensing program exceeded the cost of administration by more than $500,000. It would seem obvious therefore that the plaintiffs suffered no pecuniary loss due to the fact that some of the administration expenses were paid out of general public funds. Their second argument—to the effect that should the statutes and ordinances be declared void in a fiscal year prior to the time that the bulk of the revenue is received from the licensing program, the taxpayers would be burdened to meet all expenditures and obligations incurred thereunder — seems to be an effort to attain standing by raising themselves to that position by their own "bootstraps" in that they seek to show damage to themselves, not by what has occurred or is likely to occur, of which there is no proof, but by what might occur should they be successful in having the statutes and ordinances declared unconstitutional or invalid. Even if there were evidence that the county had expended general public funds in anticipation of revenues from the amusement licensing program, it is evident that the taxpayers would be damaged by a discontinuance of the program rather than a continuance of it. In any event it is clear that the loss or damage the complaining taxpayers claim to have sustained has likewise been proportionately suffered by all other taxpayers in the county.

Under Maryland law some special damage or a special interest must be alleged and shown before a taxpayer can be said to have standing to test the constitutionality or validity of a statute. While it is generally recognized that a taxpayer has a right to sue and make the contention, even though he may be wrong in his allegations, *Funk v. Mullan Contracting Co., supra, McKaig v. City of Cumberland, supra*, he must nevertheless prove or show that he in fact has sufficient interest to test the constitutionality or validity of a statute before he can prevail. Such was not shown in the case at bar.

*Decree affirmed; the appellants to pay the costs.*