STOVALL *v.* SECRETARY OF STATE, ET AL.

[No. 85, September Term, 1968.]

*Decided February 4, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Paul J. Cockrell* for appellants.

*Martin B. Greenfeld, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

Three taxpayers (appellants), one of whom is an alumnus of Morgan State College, appeal from an order of the Circuit Court for Anne Arundel County, Evans, J., sustaining, without leave to amend, appellees' demurrer to their petition "for an order declaring Section 1 of Chapter 41 of the Laws of Maryland of 1963 to be null and void" and for broad injunctive relief. Judge Evans concluded they were without standing to sue and that, in any case, they were barred by laches. Since we agree appellants lacked standing we do not reach the question of laches. We shall adopt Judge Evans' statement of the facts.

> "Prior to 1963 the State College System in Maryland consisted of five State Teachers' Colleges which were controlled by a board consisting of the State Board of Education and the State Superintendent of Schools, and Morgan State College, a liberal arts institution controlled by its own Board of Trustees.
>
> "In 1963, by Chapter 41, Laws of 1963, the General Assembly revised the structure of the State College system. It created a new Board of Trustees and gave it jurisdiction over the five State Teachers' Colleges,

which were renamed as State Colleges. It further directed the new Board to expand the five colleges into full liberal arts institutions. Morgan State was not immediately brought under the new Board, but Section 1 of the Act provided that, upon the happening of a certain contingency — that is, when three [or more] of the State Teachers' Colleges were accredited by the Commission on Institutions of Higher Education of the Middle States Association of Colleges and Secondary Schools—the Secretary of State would certify that fact to the Board[s] of Trustees of Morgan State College and [of] the State Colleges. After the first day of July next following the certification by the Secretary of State, the responsibility for the government of Morgan State would rest in the Board of Trustees of the State Colleges.

"On 7 June 1967 the President of the Board of Trustees of the State Colleges advised the Secretary of State that all five of the State Colleges were fully accredited by the Middle States Association of Colleges. On 12 June 1967 the President of the Board of Morgan State College advised the Secretary of State that, in his view, the contingency had not occurred. The Secretary of State, in response, held a conference on 27 June 1967 with the Presidents of the respective Boards. Mr. Cockrell [counsel for appellants] as Chairman of the Political Action Committee of the Morgan Alumni Association attended the meeting and presented the views of the Alumni Association. After considering all of the documentary material and the views expressed at the meeting, the Secretary, in a letter of 28 June 1967, stated that he was of the opinion that the contingency had occurred and so certified that fact to both Boards. As a result of the Secretary's certification, on 1 July 1967 the Morgan Board went out of existence, and control of Morgan was assumed by the Board of Trustees of the State Colleges.

"The * * * [appellants] are citizens and taxpayers of the State of Maryland. One of * * * [them] is al-

so an alumnus of Morgan State College and a member of the Morgan State College Alumni Association. He joins in this action on behalf of himself and on behalf of all members of the Alumni Association. The * * * [appellants] allege that Section 1 of Chapter 41 is vague and indefinite and that in any event, the contingency that any three of the State Colleges be accredited has not occurred. They further allege that the proper procedure was not followed by the Secretary of State. They ask for broad declaratory and injunctive relief."

Additionally it should be noted that appellants, as taxpayers, brought their action in behalf of themselves individually *and* in behalf "of the class they represent; namely, citizens and taxpayers of the State of Maryland." It might also be noted that appellants insist Judge Evans' sustaining of appellees' demurrer, *without leave to amend,* was arbitrary, capricious, and violative of "understandings reached between counsel * * * [and approved] by the lower court." Although the existence of some such "understandings" is alleged in appellants' brief, the record, except for the docket entries, is silent in this regard. The relevant docket entries are as follows:

> "1968 Jan. 8    Hearing on Demurrer held in Open Court before Judge Matthew S. Evans. Court will rule after Memorandum *and Amendments* are filed. [Emphasis added.]
> 1968 Mar. 6    Opinion fd.
> 1968 Mar. 6    Decree fd."

Appellants "strongly take issue" with the docket entries quoted above claiming Judge Evans promised to allow amendments to the petition in the event his ruling was unfavorable to them. Appellees just as strongly espouse the accuracy of the docket entries. In the circumstances, it seems strange that appellants made no effort, in the court below, to resort to the provisions of Maryland Rules 826 e and 827. The relief afforded therein is not, of course, available here. Rule 885.

262

There appears to be no dispute about appellants' failure to allege an illegal expenditure of tax-derived funds resulting in either a pecuniary loss to them or an increase in their taxes. They insist, however, that it is unnecessary for them to make such an allegation. We shall examine their arguments in support of this proposition.

Prior to its repeal on 1 July 1967, pursuant to the provisions of Sec. 1 of Chapter 41 of the Laws of Maryland of 1963, Code, Art. 65A § 9 (1968 Repl. Vol.) read as follows:

"All persons holding degrees from Morgan College shall be classed as alumni of the State institution, and the general and local alumni associations of Morgan College shall be recognized by the State institution. The rank and status of each student of Morgan College, as certified by the dean and approved by the president thereof, shall be accepted by the State College as the basis for the organization of the students."

Appellant Stovall contends that all persons upon whom Morgan State College, before 1 July 1967, had conferred degrees acquired, by virtue of § 9, *supra*, "significant legal status, rights, recognition" and benefits which the repealing statute, Chapter 41 of the Laws of 1963, "failed to restore or re-enact." This fact alone, it is argued, gives Stovall and the members of the Alumni Association standing to sue. If this argument has any merit it has certainly escaped us. It is neither alleged nor suggested that the Alumni Association or any of its members has been prejudiced by the repeal of § 9. The members continue to be alumni and there is no intimation that the College has refused or will refuse to recognize the Association. Even in that most unlikely event, it can hardly be said that the Association, or any of its members, would thereby acquire standing to maintain this suit. Indeed, in the past we have denied standing to litigants the threats to whose rights and property were far more tangible and discernible than anything claimed by appellants. *E.g., Dutton v. Tawes,* 225 Md. 484, 171 A. 2d 688 (1961); *Phillips v. Ober,* 197 Md. 167, 78 A. 2d 630 (1951); *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950); *Baltimore Retail Liquor Package Stores Ass'n v. Board of Li-*

*cense Comm'rs,* 171 Md. 426, 189 A. 209 (1937); *Ruark v. International Union of Operating Eng'rs,* 157 Md. 576, 146 A. 797 (1929).

In Maryland taxpayers have standing to challenge the constitutionality of a statute when the statute as applied increases their taxes, but if they cannot show a pecuniary loss or that the statute results in increased taxes to them, they have no standing to make such a challenge. *Murray v. Comptroller,* 241 Md. 383, 216 A. 2d 897 (1966). Nevertheless, argue appellants, because their suit is a "class action," pecuniary loss or increased taxation need not be alleged. In support of this argument they rely on *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 A. 922 (1932), which held, they say, "that taxpayers interested in avoiding the waste of funds derived from taxation which would be involved in conducting a void referendum election, have sufficient interest to entitle them to apply to a court of equity for an injunction against the holding of the election." We think they have misread *Sun Cab.* The taxpayers in that case were held to have standing *because* they alleged pecuniary damage. Chief Judge Bond, for the Court, said:

> "The property loss to them [complainants as taxpayers], or the loss of civil rights, which according to our rules must be established as a foundation for the interposition of a court of equity, may be small, when apportioned among them. Probably the loss to one taxpayer in any such proceeding seldom amounts to twenty dollars, the minimum of the debt or damage which a court of equity may consider. Code, art. 16, sec. 109; *Kenneweg v. Allegany County,* 102 Md. 119, 62 A. 249, 250. But, when a suit is instituted by one or more taxpayers in representation of all, the case is quite different. The amount involved and sought to be protected is then the total amount of loss to taxpayers, or the total amount which may be wrongfully expended." *Id.* at 427.

Appellants point to Code, Art. 65A § 20 (1968 Repl. Vol.) which, before it was repealed, read as follows:

> "The exercise of the powers granted by this subtitle

will be in all respects for the benefit of the people of this State, for the increase of their education and prosperity, and for the improvement of their health, living conditions and general welfare, and as the operation and maintenance of projects by said College will constitute the performance of essential governmental functions, said College shall not be required to pay any taxes or assessments upon any project or any property acquired or used by said College under the provisions of this subtitle or upon the income therefrom; and the bonds issued under the provisions of this subtitle, their transfer and income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation by the State of Maryland or by any of its political subdivisions, or by any town or incorporated municipality or any other public agency within the State."

They argue that § 20 "tends to enlarge the benefits and rights of taxpayers insofar as Morgan State College is concerned so that standing to sue need not be predicated solely on pecuniary interest in a class action." Appellants have made no effort to develop this argument nor have they attempted to support it by the citation of authority. We think it is too esoteric to have any validity here.

Appellants' final argument is that, in effect, they have alleged pecuniary loss. They direct our attention to paragraphs Nos. 36 and 37 of their petition, which are as follows:

"36. That the illegal assumption of control over the property and affairs by the Board of Trustees of State Colleges as aforesaid was in violation of the rights of your Petitioners and the classes they represent, and further that Petitioners have been grievously harmed in the premises and that all administrative and other recourses having been exhausted as set forth above, there is no adequate remedy at law.

"37. And for further reasons to be presented at any hearing regarding these proceedings."

Appellants suggest that the transfer of control has resulted in increased taxes. In our judgment, however, the language of the quoted paragraphs can neither support a conclusion nor necessarily imply that pecuniary loss or increased taxes have been alleged. In *Citizens Comm. v. County Comm'rs*, 233 Md. 398, 400, 197 A. 2d 108 (1964), where a similar situation was presented, we said:

> "While the appellants claim that the carrying out of the provisions of the alleged unconstitutional and invalid laws, ordinances and resolutions, has resulted in loss and damage to them and all other taxpayers in the county, they have failed to prove or show any special damage or loss which is peculiar to themselves as taxpayers or otherwise."

*Decree affirmed. Costs to be paid by the appellants.*