20 Md. App. 430 (1974)
316 A.2d 263
CITIZENS PLANNING AND HOUSING ASSOCIATION ET AL.
v.
COUNTY EXECUTIVE OF BALTIMORE COUNTY ET AL.
No. 467, September Term, 1973.
Court of Special Appeals of Maryland.
Decided March 11, 1974.
*431 The cause was argued before ORTH, C.J., and MORTON and THOMPSON, JJ.
Stanley Sollins, with whom were Jeffrey M. Dreifuss and Needle, Ehudin, Sollins & Schwartz on the brief, for appellants.
Thomas J. Aversa, Jr., Assistant County Solicitor, with whom were R. Bruce Alderman, County Solicitor for Baltimore County, and Harry S. Shapiro, Assistant County Solicitor, on the brief, for appellees.
THOMPSON, J., delivered the opinion of the Court.
The appellants, several taxpayers and civic associations, filed a suit in equity against the County Executive of Baltimore County and his administrative officer. Judge Walter M. Jenifer, sitting in the Circuit Court for Baltimore County, sustained a demurrer to the amended bill of complaint without leave to further amend. Judge Jenifer held the complainants had no standing to bring the suit. We agree.
The amended bill alleged the defendants illegally reorganized the office of planning and zoning in violation of the Baltimore County Charter which vested the power of reorganization exclusively in the County Council. Attached to the bill of complaint, as an exhibit, was a letter directing the reorganization, a copy of which is set out in note one.[1] Pertinent provisions of Article 5 of the Baltimore County Charter giving the County Council and not the County Executive power to reorganize the planning office are set out *432 in note two.[2] The amended complaint alleged that the complainants' property rights would be affected in a "practical and pecuniary manner by causing said mechanism to operate in a less efficient manner and further served to damage the Plaintiffs in a pecuniary manner by potentially discouraging proper planning and zoning actions, thereby affecting the transfer and purchase of property in Baltimore County and reducing the future potential assessable property tax base of the County." Finally, the bill prayed for *433 a Declaratory Judgment that the reorganization of the office of planning and zoning of Baltimore County be deemed null and void, and for an injunction to restore the office to its status prior to July 1, 1972, and to enjoin the defendants from any future illegal reorganization of the office.
The rule concerning the standing of a taxpayer to bring suit in Maryland has been oft considered; it is most succinctly stated in Stovall v. Secretary of State, 252 Md. 258, 263, 250 A.2d 107 (1969):
"In Maryland taxpayers have standing to challenge the constitutionality of a statute when the statute as applied increases their taxes, but if they cannot show a pecuniary loss or that the statute results in increased taxes to them, they have no standing to make such a challenge."[3]
To meet this test appellants argue now, as they alleged before in conclusory language, that the office of planning and zoning will be less efficient; therefore, inefficiency will impair the County's tax base and will increase concomitantly the real estate taxes of the appellants. They further say, that "[g]overnmental efficiency is not necessarily consonant with reduction is size or abolishment of certain public jobs. The miniscule tax saving accomplished by eliminating four positions in the office of planning and zoning may very well be more than offset by the cost to the Appellants of the detrimental actions of the Appellees which ... causes a potential increase in real property taxes" by reducing the property tax base. It could just as well be said that neither is governmental efficiency necessarily consonant with an increase in public jobs. It is possible, of course, that the office will operate inefficiently under the reorganization but that conclusion is at best *434 speculative. Fewer persons in the office may well do a better job than a gaggle of voices. We think the appellants' allegations are too tenuous to give them standing to bring the instant suit.
Appellants rely primarily on Horace Mann League v. Board, 242 Md. 645, 220 A.2d 51 (1966), cert. denied, 385 U.S. 97, and Castle Farms Dairy Stores, Inc. v. Lexington Market Authority, supra. In the latter case, the question involved the constitutionality of an act of the Maryland legislature creating the Lexington Market Authority and empowering it to acquire markets from the City of Baltimore and to operate a public market. The Court said:
"If the Act is unconstitutional, the project is unlawful, and even though the City would not be obligated for the project, it presumably would incur some expense or loss in extricating itself and its property. As taxpayers, therefore, plaintiffs, are entitled to sue to enjoin such an unlawful project." Id. at 482.
It is apparent that the Court, faced with stall owner plaintiffs, was stretching the law of taxpayer standing to its utmost limits, as the Court subsequently pointed out in Gordon v. City of Baltimore, 258 Md. 682, 688, 267 A.2d 98 (1970). In Castle Farms, supra, it was apparent that the City and, ultimately, its taxpayers would be put to some measurable expense to rectify the unlawful project. In the instant case, the actions of the Administrative Office might well result in a savings not only in the four positions which were abolished but simply because it does not automatically follow that fewer people will necessarily do an inefficient job. Suffice it to say, the appellants allege no facts which necessarily lead to the conclusion that taxes will be increased; we cannot predicate standing upon their bald allegations.
Horace Mann League v. Board, supra, involved a taxpayer suit to challenge whether the establishment clause of the first amendment of the United States Constitution and of Art. 36 of the Maryland Declaration of Rights were violated *435 by monetary state grants to four private colleges. The Court predicated standing upon the obvious pecuniary interest of taxpayers to preclude illegal expenditures of public funds. Having found standing to sue, the Court also stated:
"All of the parties agree that the issues here presented are of great public interest and concern. When this is the case, the necessary interest or injury to sustain standing to institute a taxpayer's suit is `broadly comprehensive' and may be `slight.' * * * We agree with the parties that the issues are of general and urgent public interest, and they are of sufficient importance and magnitude to invoke the above principle, if the factual situation rendered it necessary to do so." Id. at 653.
Upon this principle of "urgent public interest," appellants seek to predicate their claim of standing to sue. We note that to compare direct expenditures of state money for religious purposes with the subject issue of the reorganization of a zoning commission is to compare the sublime with the ridiculous. Such comparison, moreover, is not necessary. In Horace Mann League, supra at 653, the Court expressly refused to rely solely upon the "urgent public interest" dictum.
The trial judge relied on Stovall v. Secretary of State, supra. In that case, the Court affirmed a trial court's decision sustaining a demurrer to a bill of complaint, which sought a Declaratory Judgment on behalf of complainants as taxpayers, and others similarly situated, but which did not allege any pecuniary loss or increase in taxes. The trial judge also relied on Kerpelman v. Board of Public Works, 261 Md. 436, 276 A.2d 56 (1971), cert. denied, 404 U.S. 858. In that case, the complainant sought to preclude the Board of Public Works from conveying certain wetlands to private individuals under a statutory authority. The Court said:
"When the allegations of the bill of complaint are considered, it appears that the challenged transactions have  or will  result in the placing of additional land on the tax rolls which will *436 increase the tax base of the State so that the State taxes paid by Mrs. Kerpelman will actually be reduced as a result of those transactions. There are general allegations that the conveyances will have a damaging effect upon the marine ecology of the State, but there are no allegations of facts which would support these general allegations and, in any event, there are no allegations which indicate how this will result in the payment of higher State taxes by Mrs. Kerpelman.
"The allegations of the bill of complaint rather indicate that Mrs. Kerpelman is concerned with the policy of the State of Maryland in regard to the preservation of the marshlands and wetlands, and opposes the policy existing when the bill of complaint was filed. Her interest in this aspect of the matter, however, is not alleged to be different from that generally of citizens of the State; and this Court has held that there must be allegations (and ultimate proof) of a special interest, different from the general interest of a member of the public, in the plaintiff to enable a plaintiff to challenge a statute or the action of public officials acting under a statute." Id. at 443.
We think the trial judge's reliance on these two cases was well placed. When the appellants failed to allege facts showing a potential financial loss or increase in taxes from the alleged illegal actions of the County Executive, the demurrer was properly sustained.
Finally, appellants argue that, under Hunt v. Montgomery County, 248 Md. 403, 410, 237 A.2d 35 (1968) and Shapiro v. Board of County Commissioners, 219 Md. 298, 302, 149 A.2d 396 (1959), it is improper to sustain a demurrer in a Declaratory Judgment proceeding without a declaration one way or the other of the rights of the parties. The language of those cases, as well as others, indicates quite clearly that the rule has no application unless and until there is a justiciable controversy. Prince George's County v. Board of Trustees, 269 Md. 9, 12, 304 A.2d 228 (1973); Patuxent Oil Co. v. *437 Commissioners, 212 Md. 543, 549, 129 A.2d 847 (1957). If the plaintiff lacks standing to bring a suit, then the controversy is not justiciable. This seems to be the law throughout the country. 1 Anderson, Actions for Declaratory Judgments § 318, at 741 (2d ed. 1951); Borchard, Declaratory Judgments, 33 et seq.; Eager, The Declaratory Judgment Action § 87 (1971); and 6A Moore, Federal Practice ¶ 57.15 (1973). We note that in Stovall v. Secretary of State, supra, and in Kerpelman v. Board of Public Works, supra, the appellants sought Declaratory Judgments but the Court affirmed orders sustaining demurrers thereto. Appellants, as members of the general public, without special interest in the subject matter or injury as taxpayers, must seek succor at the ballot box  not the courts.
Decree affirmed.
Appellants to pay costs.
NOTES
[1] "Dear Mr. Gavrelis:

"In the interest of a more efficient and effective operation within the Office of Planning and Zoning it has been determined that a reorganization is necessary.
"To achieve improved operations, the Comprehensive Planning Program will function under a single head. To further improve the operation of this program, the Housing and Environmental Studies Sections will be combined.
"In the Project Planning Program, the Rural Sector Planning activity will be absorbed by the respective geographical sector planning sections.
"To further streamline the operations of this office, the functions of the Deputy Director are being merged into the Office of the Director.
"The effect of the reorganization will eliminate four positions including the Deputy Director, as of July 1, 1972.
"Continuing studies are being made of all County agencies in order to achieve more effective governmental services.
 Very truly yours,
 /s/ William E. Fornoff
 William E. Fornoff
 Administrative Officer"

[2] "Section 523. Duties of the office. The office of planning and zoning shall be charged with the responsibility and duty of planning for the future development and growth of the county, including the preparation and revision of a master plan and the preparation and revision from time to time of rules and regulations governing subdivisions. It shall also be responsible for the preparation and administration of a zoning map and of zoning rules and regulations which shall constitute a zoning code. All plans and maps and all rules and regulations hereafter adopted, amended or repealed by the office of planning and zoning, or any board, commission or officer thereof, shall, prior to taking effect as law, be approved by ordinance of the county council. All reclassifications and all orders of the zoning commissioner may be appealed in the manner provided in article VI of this charter and not otherwise.

"Section 524. Reorganization of office of planning and zoning. To the extent hereafter permitted by law, the county council shall have the power by legislative act to reorganize the office of planning and zoning, to provide for and define the duties of a director of planning and zoning as head of said office, to provide for his appointment in the same manner as the heads of other offices and departments in the administrative services, to fix and determine the powers, duties and compensation of the planning board, to redesignate the planning board by some other name so as to more clearly indicate the scope of its duties and functions, to redefine the duties or abolish the office of deputy zoning commissioner, and, in general, to coordinate and centralize the planning and zoning functions of the county in such manner as may be to the best interests of the county and its future development and growth."
[3] Appellants allege that Maryland cases seem to impose a stronger burden on taxpayer suits which challenge legislative acts as contrasted to challenges of ultra vires acts by the executive branch of the government. We have been unable to ascertain such a distinction. Appellants cite only Castle Farms Dairy Stores, Inc. v. Lexington Market Authority, 193 Md. 472, 67 A.2d 490 (1949), to sustain the argument. That case involved the constitutionality of a statute creating the Lexington Market Authority and we are unable to see any support for appellants' proposition in that case.