273 Md. 333 (1974)
329 A.2d 681
CITIZENS PLANNING AND HOUSING ASSOCIATION ET AL.
v.
COUNTY EXECUTIVE OF BALTIMORE COUNTY ET AL.
[No. 55, September Term, 1974.]
Court of Appeals of Maryland.
Decided December 18, 1974.
Motion for rehearing filed January 16, 1975.
Denied January 29, 1975.
*334 The cause was argued before MURPHY, C.J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.
Stanley Sollins and Cleaveland D. Miller for appellants.
Thomas J. Aversa, Jr., Assistant County Solicitor, with whom were R. Bruce Alderman, County Solicitor, and Harry S. Shapiro, Assistant County Solicitor, on the brief, for appellees.
LEVINE, J., delivered the opinion of the Court. ELDRIDGE and O'DONNELL, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which O'DONNELL, J., concurs at page 346 infra.
This appeal arises out of an equity suit, seeking injunctive and declaratory relief, filed by appellants: a metropolitan-area civic organization, a group of neighborhood and area civic improvement associations, and several individuals alleging they are "residents, citizens, taxpayers and property owners of Baltimore County." The individuals have sued "on their own behalf and on behalf of all other residents, citizens, taxpayers and property owners of Baltimore County who are similarly situated and on *335 behalf of similarly situated non-individual Plaintiffs, as a class action and as a representative thereof of all their claims, in accordance with, and as provided in Rule 209 of the Maryland Rules of Procedure." In question here is the standing of these parties to maintain this action.
After defendants-appellees, the County Executive and the County Administrative Officer of Baltimore County, demurred to the original bill of complaint, appellants obtained leave to amend. In their amended bill of complaint, they allege that appellees initiated a "reorganization" of the "Office of Planning and Zoning" in violation of Article V, Section 524 of the Baltimore County Charter, which confers upon the county council the exclusive power to reorganize the Office of Planning and Zoning by legislative action.[1] Appellants allege that this action was, therefore, ultra vires, illegal and unconstitutional.
To establish the necessary standing for bringing this action, appellants allege that they have suffered special damages:
"(a) As taxpayers of Baltimore County because said acts by the Defendants will make the Office less efficient in carrying out its functions and *336 responsibilities, and this will result in an impairment of the property tax base of the County, therefore causing a prospective pecuniary loss incident to the increase in the amount of taxes the Plaintiffs and other such taxpayers will be constrained to pay.
"(b) As real property owners within Baltimore County, in that a charter created mechanism to assure proper planning and zoning practices and processes within the County has been made less efficient and more costly and their property itself stands to depreciate in value as a result."
They conclude by alleging that unless granted appropriate injunctive and declaratory relief, they and all other "citizens, taxpayers and property owners in Baltimore County will suffer irreparable loss, harm and damage."
The amended bill of complaint prompted the filing of a second demurrer by appellees in which they again challenged appellants' standing to maintain their action. This position was upheld by the circuit court which, in sustaining the demurrer,[2] ruled that appellants had "failed to allege any facts showing that the alleged actions of the Defendants would result in increased taxes or pecuniary loss to them." The court regarded the allegations of the amended bill of complaint as "mere conclusions," based on conjecture and speculation, which were "without any supporting factual foundation."
On appeal to the Court of Special Appeals, the circuit court decision was affirmed in Citizens P. & H. Ass'n v. County Exec., 20 Md. App. 430, 316 A.2d 263 (1974). Relying on Kerpelman v. Bd. of Public Works, 261 Md. 436, 276 A.2d 56 (1971), cert. denied, 404 U.S. 858 (1971) and Stovall v. Secretary of State, 252 Md. 258, 250 A.2d 107 (1969), as did the circuit court, the Court of Special Appeals held that the allegations in the bill of complaint were conclusory, and that *337 "... appellants [had] failed to allege facts showing a potential financial loss or increase in taxes from the alleged illegal actions of the County Executive, ...." 20 Md. App. at 436 (emphasis added). We granted certiorari to consider this important question of standing.
In this Court, appellants renew their contention that the allegations of anticipated pecuniary loss and higher taxes in the amended bill of complaint meet the test of sufficiency applicable in the face of a demurrer. They claim that the cases merely require them to allege a potential pecuniary loss, and that they have satisfied this requirement. Furthermore, they contend that since the actions of the County Executive are illegal and ultra vires, the expenditure of monies for salaries subsequent to the reorganization is also illegal, even if the latter results in a net reduction in salary payments, because all the positions in the reorganized Office of Planning and Zoning partake of that illegality. To that extent, they urge, the taxes which fund those illegal salaries represent an increase sufficient to confer standing. Appellants conclude by urging that taxpayer litigation is the only meaningful remedy for dealing with governmental abuse such as they have alleged here; and that the ballot box, to which they have been relegated by the Court of Special Appeals, does not afford adequate relief for this purpose.
Apart from maintaining against the individual appellants the same position which they have successfully advocated twice below, appellees also contend that the organizational appellants lack standing to sue. They argue that those groups have failed, as required by our prior decisions, to allege facts showing an interest in the subject matter that is of a wholly distinct character from that of their individual members.
In considering the propriety of the circuit court decision, we are mindful that in ruling on a demurrer to a bill of complaint, the chancellor must assume as true, for that purpose, all of the well-pleaded facts in the bill of complaint and attached exhibits, as well as the inferences which may be reasonably drawn from those well-pleaded facts, Thomas *338 v. Howard County, 261 Md. 422, 430, 276 A.2d 49 (1971); Hall v. Barlow Corporation, 255 Md. 28, 42, 255 A.2d 873 (1969); Parish v. Milk Producers Assn., 250 Md. 24, 71, 242 A.2d 512, 538 (1968).

(1)
This Court has had occasion to consider the question presented here  taxpayer standing  on a number of occasions, beginning with Baltimore v. Gill, 31 Md. 375 (1869). There, the City of Baltimore wished to raise money to assist the Western Maryland Railroad in the completion of its Williamsport line. The City planned to accomplish this by borrowing one million dollars and pledging as security certain stock which it owned in the railroad. In holding this to be violative of the Maryland Constitution, our predecessors said:
"It is certainly well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public.... But it appears from the averments of the bill, that these complainants, as taxpayers of the city, and others similarly situated, in whose behalf as well as their own the bill is filed, constitute a class specially damaged by the alleged unlawful act of the corporation, in the alleged increase of the burden of taxation upon their property situated within the city. The complainants have therefore a special interest in the subject-matter of the suit, distinct from that of the general public.
* * *
"In this State the courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of *339 their lawful authority, and of protecting the citizen from the consequence of their unauthorized or illegal acts." 31 Md. at 394-95.
From this decision and the long line of Maryland cases following in its wake, the principle has become established that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal or ultra vires, and may injuriously affect the taxpayer's rights and property. Reed v. McKeldin, 207 Md. 553, 558, 115 A.2d 281 (1955); Masson v. Reindollar, 193 Md. 683, 688, 69 A.2d 482 (1949); Liquor Stores Assn. v. Commrs., 171 Md. 426, 429, 189 A. 209, 109 A.L.R. 1253 (1937). The corollary to this rule is that the taxpayer will be allowed such relief only when some special damage is alleged and proved, or a special interest is shown which is distinct from that of the general public. Citizens Committee v. Co. Comm., 233 Md. 398, 401, 197 A.2d 108 (1964). This has been interpreted to require a showing that the action being challenged results in a pecuniary loss or an increase in taxes. Stovall v. Secretary of State, supra, 252 Md. at 263; Murray, Etc. v. Comptroller, 241 Md. 383, 391, 216 A.2d 897 (1966), cert. denied, 385 U.S. 816 (1966). From among the profusion of cases decided by this Court on the question of standing, several emerge as worthy of particular comment here.
In Sun Cab Co. v. Cloud, 162 Md. 419, 159 A. 922 (1932), suit was brought in equity to enjoin a referendum aimed at nullifying the Act of the General Assembly which subjected taxicab operators to regulation by the Public Service Commission. The suit claimed that the referendum petition contained a number of invalid signatures. Thus, it was alleged that "... if the referendum should proceed upon the [invalid] petitions ..., the taxpayers will be put to wrongful expense for the publication of the referendum and the printing of it on the ballots of the next general election...." 162 Md. at 422. Standing to bring the action was upheld, the Court stating:
"The objection that the complainants as *340 taxpayers lack sufficient interest to bring the suit is answered to some extent by the conclusions just announced. If the subject-matter is at all within the cognizance of a court of equity, as we conclude it is, if that court may be resorted to for prevention of a popular vote which would be void because based upon insufficient petitions, then, according to the settled practice, taxpayers interested in avoiding the waste of funds derived from taxation which would be involved in conducting the void referendum may make application to the court for the remedy...." 162 Md. at 426-27 (emphasis added).
A suit for injunctive and declaratory relief was brought in Castle Farms, Etc. v. Lex. Mkt. Auth., 193 Md. 472, 67 A.2d 490 (1949), where the plaintiffs, who were taxpayers and stall owners, unsuccessfully sought to have the Act establishing the Lexington Market Authority declared unconstitutional. In holding that they had standing to maintain the action, this Court said:
"If the Act is unconstitutional, the project is unlawful, and even though the City would not be obligated for the project, it presumably would incur some expense or loss in extricating itself and its property. As taxpayers, therefore, plaintiffs, are entitled to sue to enjoin such an unlawful project. Matthaei v. Housing Authority, 177 Md. 506, 610, 9 A.2d 835. As owners and claimants of rights in the market, they may also, in the same case, sue to protect their property rights. Green v. Garrett, 192 Md. 52, 63 A.2d 326, 328. The conflict between any rights of plaintiffs in the market and their interests as taxpayers shows the artificial character of this suit, but does not bar it." (emphasis added) 193 Md. at 482.
The same result obtained in Horace Mann League v. Board, 242 Md. 645, 220 A.2d 51 (1966), cert. denied, 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966), in which matching *341 grants to four private colleges for the construction of buildings were challenged by a group of individual and organizational plaintiffs. The taxpaying citizens were held to possess the necessary standing to maintain that suit. Similarly, in Gordon v. City of Baltimore, 258 Md. 682, 267 A.2d 98 (1970), we held that a resident-taxpayer in Baltimore City had standing to seek to enjoin the Peabody Institute from transferring its books to the Enoch Pratt Free Library. Determinative there were the expenses to be borne by the City's taxpayers  including the plaintiff  as a consequence of the proposed transfer.
In Thomas v. Howard County, supra, we also held that there was standing in an equity suit brought by two individuals and a local union in which they alleged a failure to enforce the Howard County Plumbing Code. The individuals, who were not only residents and taxpayers, but also plumbers, claimed that a loss of permit fees to the county and an impairment of employment opportunities would result from the lack of enforcement. After reviewing a number of our prior decisions, which we have also mentioned here, we observed that: "We and our predecessors have gone rather far in sustaining the standing of taxpayers to challenge the alleged illegal and ultra vires actions of public officials." 261 Md. at 432. Writing for the Court, Judge Barnes then said:
"In our opinion, this is and has been a salutary policy conducive to the advancement of the public interest and should not be narrowed or impaired. We note with satisfaction that the Maryland view in this regard represents the general trend of the authorities in our sister states and especially in the Federal Courts where the restrictive holding by the Supreme Court of the United States in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) has been substantially eroded...." Id. at 433.
These cases are fairly representative of those in which we have determined that there was standing to maintain taxpayer litigation. As we have already suggested, there are decisions on the other side of the ledger. Three in particular, *342 including those found to be controlling in this case by the courts below, bear mentioning here.
In Citizens Committee v. Co. Comm., supra, an action for injunctive relief was instituted by an incorporated citizens committee and a group of individual citizen-taxpayers challenging the validity of certain local laws and ordinances purporting to authorize the operation of gambling devices and related activities in Anne Arundel County. The chancellor, after hearing the case on the merits, ruled that the statutes were valid and dismissed the bill of complaint. The Court noted the absence of any allegation or proof that the statutes being challenged, which had been enacted some years before the suit was brought, had caused the plaintiffs any pecuniary loss. To the contrary, the allegations affirmatively disclosed that the revenue derived by the county from the licensing decreased the tax rate, and, thereby, the taxes paid by the plaintiffs.
One of the two cases followed below by the circuit court and the Court of Special Appeals is Stovall v. Secretary of State, supra, where a decree sustaining, without leave to amend, a demurrer to a bill of complaint for injunctive and declaratory relief was affirmed on appeal. In holding that the complainants lacked standing to sue, we noted the total absence of any allegation of an "... illegal expenditure of tax-derived funds resulting in either a pecuniary loss to them or an increase in their taxes. They insist[ed], however, that it [was] unnecessary for them to make such an allegation. ..." 252 Md. at 262 (emphasis added). That argument, of course, was rejected as being contrary to Maryland law.
Lastly, we consider Kerpelman v. Bd. of Public Works, supra, our most recent expression on this subject. There, it was alleged by a taxpaying resident of Baltimore, attacking a statute authorizing the State to dispose of certain wetlands, that the State was illegally conveying its property to others; that these lands were being sold for an inadequate consideration; and that irreparable damage and injury would result to the ecology and natural resources of the State at a loss of "many millions of dollars." In affirming, we noted the allegation that the plaintiff was a taxpayer and *343 resident of Baltimore City rather than Worcester County where the land was located. It also appeared affirmatively from the allegations of the bill of complaint that the acts being challenged would result in the placing of additional land on the tax rolls, which would increase the tax base of the State and consequently would reduce the State taxes paid by the plaintiff.
Persuaded by Citizens Committee v. Co. Comm., supra, and Kerpelman, the Court of Special Appeals suggests a similarity between those cases and the one at bar, since "... the actions of the Administrative Office might well result in a savings not only in the four positions which were abolished but simply because it does not automatically follow that fewer people will necessarily do an inefficient job." Continuing, the court then said "... the appellants allege no facts which necessarily lead to the conclusion that taxes will be increased; we cannot predicate standing upon their bald allegations." 20 Md. App. at 434 (emphasis added).
There is considerable force in the argument urged upon us by appellants that if the reorganization inaugurated by appellees is unlawful, the expenditure of public funds to finance that program may thereby be open to question. In other words, the waste of tax-derived monies that will have resulted from funding positions declared to be illegally created is sufficient to confer standing. Cf. Sun Cab Co. v. Cloud, supra, at 426-27. Additionally, in such circumstances, it is not illogical to expect that the county might incur some expense or loss, to the detriment of the taxpayers, including appellants, in an effort to fend off the charges of illegality. Such potential losses alone may be sufficient to establish standing. See Castle Farms, Etc. v. Lex. Mkt. Auth., supra, at 482.
Moreover, we think an effective answer to the "tax savings" argument is found in Horace Mann League v. Board, supra, where we quoted from Berghorn v. Reorganized School Dist. No. 8, 260 S.W.2d 573, 581 (Mo. 1953) in stating: "`In determining a taxpayer's pecuniary injury resulting from the unlawful expenditure of public funds, we may not weigh lawful expenditures against *344 unlawful expenditures, because no legal injury results from the lawful expenditures of public funds.'" 242 Md. at 653.
Nor is the amount of the loss which each taxpayer might sustain determinative of his standing to sue. The property loss may be small when apportioned among all of them, especially where, as here, the suit is instituted by one or more taxpayers in representation of all those similarly situated. Cf. Sun Cab Co. v. Cloud, supra, at 427. Nor is it essential that the amount of the loss of revenue be specifically set forth. Indeed, as we said in Thomas v. Howard County, supra:
"... The details of the loss of revenue like the details of the amount of taxes paid by the individual plaintiffs are matters of proof as and when the case is tried on its merits. It may be that at the trial the plaintiffs may not be able to prove any loss to them as taxpayers or the County may establish by proof that there was no such loss; but in regard to these matters we obviously express no opinion." 261 Md. at 431-32.
The courts below attached considerable significance to what they regard as conclusory language in the bill of complaint. Concededly, the allegations might have been particularized in greater detail, but this shortcoming may have been unavoidable in the unique circumstances of this case. The extent to which a taxpayer is capable of detailing the damage anticipated from an illegal and ultra vires act, such as is alleged here, may be rather limited at the time the suit is initially filed. Contrary to the suggestion of the Court of Special Appeals, appellants are not required to allege "... facts which necessarily lead to the conclusion that taxes will be increased." 20 Md. App. at 434 (emphasis added). The test is whether appellants reasonably may sustain a pecuniary loss or a tax increase; see Reed v. McKeldin; Masson v. Reindollar; Liquor Stores Assn. v. Commrs., all supra; or, as the Court of Special Appeals itself noted, whether there has been a showing of potential pecuniary damage, Gordon v. City of Baltimore, supra, at 687-88; see Thomas v. Howard County, supra, at 432.
*345 In sum, this case is readily distinguishable from Citizens Committee, Stovall and Kerpelman, all supra. When we accept as true the reasonable inferences which may be drawn from the facts alleged, we think that the allegations of standing on the part of the individual appellants are sufficient to withstand a demurrer; and that the better-reasoned view supports them on the question of standing.

(2)
The organizational appellants shall not fare as well as their individual counterparts. It has been generally recognized in this State that an association lacks standing to sue where it has no property interest of its own  separate and distinct from that of its individual members  which may be affected by any of the alleged acts under attack. Md. Naturopathic Ass'n v. Kloman, 191 Md. 626, 630, 62 A.2d 538 (1948); see Citizens Committee v. Co. Comm., supra, at 400, and Horace Mann League v. Board, supra, at 652; cf. Improvement Ass'n v. Raine, 220 Md. 213, 217, 151 A.2d 734 (1959); Windsor Hills Imp. Ass'n v. Balto., 195 Md. 383, 394, 73 A.2d 531 (1950); Largo Civic Ass'n v. Pr. Geo's Co., 21 Md. App. 76, 80, 318 A.2d 834 (1974). The bill of complaint includes no allegations remotely suggesting that any of the organizational appellants possess such separate interests; hence, they lack the necessary standing to maintain this action.
Judgment of the Court of Special Appeals affirmed in part, reversed in part; remanded to that court with instructions to affirm in part, and reverse in part, the order of the Circuit Court for Baltimore County and to remand the case for further proceedings not inconsistent with this opinion; appellants to pay one-third of costs, appellees to pay two-thirds.
*346 Eldridge, J., dissenting:
The majority opinion in this case is directly contrary to the principles regarding taxpayers' standing to sue which this Court has consistently adhered to for over one hundred years.
In Baltimore v. Gill, 31 Md. 375, 394 (1869), our predecessors stated:
"It is certainly well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public. Thus an individual cannot maintain a bill of injunction to prevent a public nuisance, unless he suffers thereby some special damage...."
The Court in Gill went on, however, to hold that the complainants there did suffer some "special damage" as taxpayers because, under the allegations, the unlawful act would result in an "increase of the burden of taxation upon their property situated within the city." (Ibid.) See also Citizens Committee v. Co. Comm., 233 Md. 398, 400-404, 197 A.2d 108 (1964); Ruark v. Engineers' Union, 157 Md. 576, 588-590, 146 A. 797 (1929), and cases therein cited.
Moreover, merely being a taxpayer is not a sufficient basis for standing to attack the acts of one's government on the ground that they are unlawful. "[N]or can taxpayers restrain official acts upon the mere ground that they are ultra vires." Ruark v. Engineers' Union, supra, 157 Md. at 588; Bauernschmidt v. Standard Oil Co., 153 Md. 647, 651, 139 A. 531 (1927). As this Court's cases hold, one who bases his standing to challenge ultra vires governmental action upon the fact that he is a taxpayer, must be able to show that the governmental action results in pecuniary loss or increases his taxes. Kerpelman v. Bd. of Public Works, 261 Md. 436, 442-443, 276 A.2d 56, cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 100 (1971); Gordon v. City of Baltimore, 258 Md. 682, 688-689, 267 A.2d 98 (1970); Stovall v. Secretary of State, 252 Md. 258, 263, 250 A.2d 107 (1969); *347 Murray, Etc. v. Comptroller, 241 Md. 383, 391, 216 A.2d 897, cert. denied, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966); Citizens Comm. v. County Comm'rs, supra, 233 Md. at 401-405; Ruark v. Engineers' Union, supra, 157 Md. at 589-590.
In all of the cases relied on in the majority opinion where this Court held that the complainants had standing as taxpayers to challenge allegedly illegal governmental action, it was clear, or at least likely, that the government acts would result in losses of public money. The suit in Sun Cab Co. v. Cloud, 162 Md. 419, 422, 159 A. 922 (1932), was to prevent the government officials from holding an allegedly illegal referendum on a law because "the [plaintiff] taxpayers will be put to wrongful expense for the publication of the referendum and the printing of it on the ballots of the next general election...." In Castle Farms, Etc. v. Lex. Mkt. Auth., 193 Md. 472, 478, 482, 67 A.2d 490 (1949), the governmental action under attack was creation of a Baltimore City "instrumentality" and "public corporation" to "erect, remodel, extend, improve, equip, operate and maintain" the Lexington Market, and the Court pointed out that the City "presumably would incur some expense or loss in extricating itself and its property." Also in that case, the plaintiffs had standing as "owners and claimants of rights in the market" and thus were entitled to "sue to protect their property rights." (Id. at 482.) In Horace Mann League v. Board, 242 Md. 645, 220 A.2d 51, cert. denied, 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966), the plaintiff taxpayers were contesting the expenditure of $2,500,000.00 in public money in the form of State grants to private colleges. In Gordon v. City of Baltimore, 258 Md. 682, 689, 267 A.2d 98 (1970), this Court pointed out that the challenged transfer of books from the Peabody Institute to the Enoch Pratt Free Library would cost an additional $100,000.00 for salaries and would result in expenditures likely to exceed $1,000,000.00 to preserve the books, and the Court continued: "That these expenses are and will be borne by the City's taxpayers, including Mr. Gordon, is beyond question." In Thomas v. Howard County, 261 Md. 422, 430-431, 276 A.2d 49 (1971), *348 the alleged failure of county officials to enforce the plumbing code, about which the plaintiffs as taxpayers were complaining, resulted in a "substantial loss to the County of permit fees...."
The present case is totally different from the above-cited decisions invoked by the majority opinion. Here, there are no allegations leading to the conclusion, or even the likelihood, that Baltimore County's reorganization of the Office of Planning and Zoning will increase government expenditures or result in a loss of government funds. Under the allegations of the bill of complaint, and the letter from the County Administrative Officer to the Director of Planning which was incorporated in the bill of complaint, the only "reorganization" of the Office of Planning and Zoning was to merge or combine certain functions and sections so as to reduce the necessary personnel requirements by four positions. No operations or functions of the office itself were done away with. Instead, as the letter stated, "The effect of the reorganization will eliminate four positions." Thus, the government action here, by reducing the county's work force by four employees, and consequently reducing the amount the county would have to pay in salaries, resulted in a saving of public money. In this respect, the case is like Kerpelman v. Bd. of Public Works, supra, 261 Md. at 443, and Citizens Committee v. Co. Comm., supra, 233 Md. at 404, where in each case taxpayers were denied standing to challenge allegedly illegal government action because the likely effect of the government action was a net gain in public funds instead of a loss.
The only "damages" which the county's reorganization of the Office of Planning and Zoning allegedly caused the individual plaintiffs as taxpayers was set forth in the bill of complaint as follows:
"As taxpayers of Baltimore County [plaintiffs were damaged] because said acts by the Defendants will make the Office less efficient in carrying out its functions and responsibilities, and this will result in an impairment of the property tax base of *349 the County, therefore causing a prospective pecuniary loss incident to the increase in the amount of taxes the Plaintiffs and other such taxpayers will be constrained to pay."
Thus, the sole basis for the allegation that the allegedly illegal act, namely a reduction in force, would cause an increase in the expenditure of plaintiffs' tax money was that the governmental action would result in less efficiency. However, no specific facts were alleged to explain how the reorganization would result in less efficiency. The mere combining of certain government functions, resulting in four less employees, furnishes no basis for concluding that the government will in all likelihood be less efficient. If it does, any taxpayer will have standing to challenge any discharge of a government employee where the employee is not replaced, on the ground that the government entity will be less "efficient" and will thus cause an increase in his taxes, even though the discharged employee himself does not object.[1]
The subject case, in my opinion, is virtually indistinguishable from Stovall v. Secretary of State, supra, 252 Md. 258. In that case the State, purportedly acting pursuant to statute, abolished the Board of Trustees of Morgan State College and placed the responsibility for governing Morgan State College under the Board of Trustees of State Colleges, which board had previously governed the five other state colleges. Thus in Stovall, as in the case at bar, separate functions, previously under separate heads, were combined under a single authority, and certain positions were eliminated. The complainants in Stovall, claiming that they had standing as alumni of Morgan State College and also as taxpayers of the State of Maryland, brought suit to have the reorganization declared "null and void" and for injunctive relief, claiming that the *350 reorganization was illegal because the statute authorizing it was "vague and indefinite," and that, in any event, a contingency required by the statute had not occurred. Plaintiffs asserted that "the transfer of control has resulted in increased taxes." (Id. at 265.) This Court, however, in an opinion by Judge McWilliams, flatly held that plaintiffs did not have standing as taxpayers to challenge the reorganization because the allegations of the bill of complaint "can neither support a conclusion nor necessarily imply that pecuniary loss or increased taxes have been alleged." (Ibid.) Similarly, in the instant case, the paragraphs of the bill of complaint do not contain allegations of facts leading to the conclusion, or necessary implication, that pecuniary loss or increased taxes will result from the reorganization of the Baltimore County Office of Planning and Zoning.[2]
If we were to reconsider our prior decisions, overrule them, and frankly hold that any citizen of Maryland has standing to challenge an allegedly illegal action by the government of the jurisdiction of which he is a resident, such holding might have merit. But we should not reach this result by the fiction that in this case the plaintiffs' tax money is being illegally expended when, in fact, the challenged governmental action obviously results in a saving of the plaintiffs' tax money.
Judge O'Donnell authorizes me to state that he concurs in the views expressed herein.
NOTES
[1] The basis for the allegation that appellees had commenced the "illegal" reorganization was a letter written by the Administrative Officer at the behest of the Executive to the Director of the Office of Planning stating:

"In the interest of a more efficient and effective operation within the Office of Planning and Zoning, it has been determined that a reorganization is necessary.
"To achieve improved operations, the Comprehensive Planning Program will function under a single head. To further improve the operation of this program, the Housing and Environmental Studies Sections will be combined.
"In the Project Planning Program, the Rural Sector Planning activity will be absorbed by the respective geographical sector planning sections.
"To further streamline the operations of this office, the functions of the Deputy Director are being merged into the Office of the Director.
"The effect of the reorganization will eliminate four positions, including the Deputy Director, as of July 1, 1972.
"Continuing studies are being made of all County agencies in order to achieve more effective governmental services." (emphasis added).
[2] Although the trial court granted appellants leave to amend a second time, they declined to avail themselves of that opportunity. Thus was signed the final order which led to this appeal.
[1] In this connection, it should be pointed out that there are an estimated 287, 965 state, county and municipal government employees in Maryland. See The Maryland State Budget For The Fiscal Year Ending June 30, 1975, submitted to the General Assembly of Maryland in January 1974, Vol. I, at 214.
[2] The majority opinion in the subject case attempts to distinguish Stovall on the ground that in that case, the complainants took the position that they need not allege a pecuniary loss to them or an increase in taxes. However, this was only an alternative argument by complainants in Stovall. Complainants there alleged that they had standing on three separate grounds: (a) that they were alumni of Morgan State College (id. at 262); (b) that where an action is a "class action," the complaining taxpayers need not allege pecuniary loss or increased taxation (id. at 263); (c) that "they have alleged pecuniary loss" (id. at 264). Thus, Stovall cannot be distinguished on the basis of the arguments made to the court by the taxpayers.